# IN THE SUPREME COURT OF IOWA

No. 46 / 06-1382

Filed August 31, 2007

**MICHAEL JOSEPH BERENT, MICHAEL STEVEN ROMP, JEFF WAYNE THORNE, PAUL BRYSON INGRAM, NICHELLE ALINE THOMPSON, RODNEY EDWARD SULLIVAN, SARA LILLIS EPSTEIN, SARA CRANE SWISHER, BETTE JAYNE MAYES, CAROLINE M. DIETERLE, MATT BLIZEK, MORI CONSTANTINO, AMANDA COYNE, LOLLY EGGERS, ELLEN HAYWOOD, JON KLINKOWITZ, KAREN KUBBY, BOB THOMPSON, JAMES WALTERS, ROBERTA TILL RETZ and JENNIE LOUISE EMBREE,**

        Appellees,

**vs.**

**CITY OF IOWA CITY and "OBJECTIONS COMMITTEE" OF IOWA CITY,**

        Appellants.

---

Appeal from the Iowa District Court for Johnson County, William L. Thomas, Judge.

The City of Iowa City appeals a district court decision which held the objections committee exceeded its legal authority in refusing to present three proposed charter amendments to public vote and that the City's preelection challenge of the amendments' legality was not ripe for judicial review. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

Eleanor M. Dilkes, City Attorney, and Susan M. Dulek, Assistant City Attorney, for appellants.

Bruce D. Nestor of De Leon & Nestor, LLC, Minneapolis, Minnesota, for appellees.

**APPEL, Justice.**

In this case, we are asked to determine whether three proposed amendments to the Charter of the City of Iowa City should be placed before the voters. The three proposals called for a retention election for the city manager and the police chief, established a permanent police citizens review board with certain investigative and other powers, and sought to limit police practices with respect to nonviolent misdemeanors. After timely objections were filed, the City's objections committee determined that the proposed amendments were legally flawed and, as a result, the City did not present the amendments to the voters.

Citizens challenged the City's refusal in district court. The City, alternatively, sought a declaration that the proposed amendments were unlawful. The district court ruled that the objections committee exceeded its authority, refused to grant the City declaratory relief on the ground that the legal issues raised by the City were not ripe for judicial review, and ordered the City to present the proposed charter amendments to the voters. For the reasons expressed below, the decision of the district court is affirmed in part and reversed in part, and the case remanded with instructions.

## I. Background Facts and Proceedings.

**A. Home Rule Framework for Charter Government.** In order to put this case, involving city governance, in proper perspective, we begin by reviewing the development of home rule in Iowa. This home rule review will provide an overview of the scope of and limitations on the power of municipalities in Iowa to structure their local governments.

In 1868, the Chief Justice of the Iowa Supreme Court, John F. Dillon, declared that municipalities were creatures of the legislature and had only

those powers expressly granted by the legislature. *City of Clinton v. Cedar Rapids & Missouri River R.R.*, 24 Iowa 455, 475 (1868). For the next hundred years, the General Assembly, through application of what became known as the Dillon Rule, maintained a tight legislative grip over municipal affairs through a combination of inaction and a jungle of code provisions. This tight legislative grip was relaxed, to some extent, in 1968, when Iowa enacted a home rule amendment to the Iowa Constitution. Iowa Const. art. III, § 38A.

The Iowa home rule amendment was a compromise between those who desired unlimited home rule and those who favored continued legislative control of municipal affairs. *Bechtel v. City of Des Moines*, 225 N.W.2d 326, 328–29 (Iowa 1975). While the Iowa home rule amendment reversed the Dillon Rule, the legislature retained the right to legislate even on matters involving local affairs. The constitutional amendment allocated no areas or subject matter exclusively for municipal control. The continued ability of the legislature after the enactment of the home rule amendment to trump or preempt local law has been repeatedly recognized by this court. *Iowa Grocery Indus. Ass'n v. City of Des Moines*, 712 N.W.2d 675, 678–79 (Iowa 2006); *Bechtel*, 225 N.W.2d at 332. Iowa's type of home rule, sometimes referred to as legislative home rule, has been criticized by some as not providing municipalities with sufficient local autonomy. Richard Briffault, *Our Localism: Part I--The Structure of Local Government Law*, 90 Colum. L. Rev. 1, 8–9 (1990).

After the enactment of the home rule amendment, the legislature for several years worked on a revision of the substantial state legislative framework in which municipalities were required to operate. After a few years of study, the legislature in 1972 enacted what was known as a home

rule bill. While the legislative revision reflected in the home rule bill was in many respects a nip and tuck operation, the legislature also made changes in substantive law. Among other things, the home rule bill authorized Iowa municipalities to adopt a charter form of government. Iowa Code § 372.1(5) (2001). *See generally* Sam F. Scheidler, *Survey of Iowa Law: Implementation of Constitutional Home Rule in Iowa*, 22 Drake L. Rev. 294, 316 (1973).

By allowing municipalities to adopt a charter form of government, the legislature permitted local governments to engage in some variations from the traditional structure of government. The legislature required, however, that all municipal charters include provisions for a city council of at least five members, a mayor who may be a council member, and staggered elections for the office of mayor and city council. The legislature also required that the powers and duties of the mayor and the council be established and that such provisions be consistent with the city code. Iowa Code § 372.10.

**B. Method of Adopting and Amending a City Charter.** Iowa City has chosen to adopt a charter form of government, which petitioners now seek to amend. The legislature has provided three methods of amending a city charter by: (1) the city council submitting the matter to voters, (2) the city council passing an ordinance with submission to the voters if so requested by petition, and (3) petitioners proposing an amendment to be submitted to voters for approval. *Id.* § 372.11. It is the third method that is at issue in this case.

The legislature has established a substantive and procedural framework with respect to petitions that trigger municipal elections, including elections to consider amendments to a municipal charter. In order to invoke the electoral process by petition, the legislature required the

petition to "include the signatures of the petitioners, a statement of their place of residence, and the date on which they signed the petition." *Id.* § 362.4. The legislature has declared that a petition is "valid" if it is "signed by eligible electors of the city equal in number to ten percent of the persons who voted at the last preceding regular city election. . . ." *Id.*

Upon receipt of a petition, the legislature has authorized the city clerk to examine it before accepting it for filing. *Id.* If upon the clerk's examination the petition "appears valid on its face," the legislature has directed that the petition "shall" be accepted for filing. On the other hand, if the petition lacks the required number of signatures, the clerk is directed to return the petition to the petitioner. *Id.*

Once the clerk has accepted a petition for filing, the petition is deemed "valid" unless written objections are filed with the city clerk within five working days after the petition is received. *Id.* The receipt of a timely written objection triggers review by an objections committee, consisting of the mayor, the city clerk, and one member of the council chosen by council ballot. *Id.* § 44.8. The legislature has directed that the city council *must* present a "valid" petition to amend a city charter to the voters in a special election. *Id.* § 372.11(3).

**C. Proposed Charter Amendments.** This case involves three petitions to amend the Charter of the City of Iowa City. The first petition related to the appointment and retention of the city manager and the chief of police [hereinafter retention proposal]. As with the current charter, the retention proposal vested authority in the city council to appoint a city manager and chief of police. The retention proposal also directed the city council to conduct an annual performance review for each position. In

addition, the retention proposal stated that the city manager and the police chief "shall be subject to" a retention vote every four years.

The second petition sought to create a permanent police citizens' review board [hereinafter PCRB proposal].  The PCRB proposal provided that the board would investigate citizen claims of misconduct by sworn police officers, issue reports on these complaints to the city council, hold at least one community forum per year, and make recommendations regarding police practices to the city council.  The PCRB proposal clothed the board with subpoena power in order to fulfill its functions.

The third petition sought to alter police procedures regarding nonviolent misdemeanor offenses [hereinafter community policing proposal]. The community policing proposal sought to direct the police to issue citations rather than arrest perpetrators of nonviolent misdemeanor offenses, restrict the police's ability to investigate, apprehend, and arrest subjects of misdemeanor crimes, declare that arresting persons in possession of personal-use amounts of marijuana not be a priority of the Iowa City Police Department, and restrain the use of warrants for nonviolent, misdemeanor offenses.

**D.    Administrative and Judicial Proceedings Related to the Proposed Charter Amendments.**  The three petitions were submitted to the city clerk in August 2001.  Each petition was signed by approximately 1600 electors.  The city clerk examined the petitions, found them valid on their face, and accepted them for filing.  Seven individuals and the League of Women Voters timely filed objections to each of the three petitions.  As a result, an objections committee was formed consisting of the mayor, the city clerk, and a member of the city council.

The objections committee held a public hearing at which it entertained a wide range of objections to each of the proposed amendments. The city attorney advised the objections committee that it could not reject a petition on policy grounds, but could only dismiss them for "legal insufficiency." At the hearing, the objections committee refused to sustain a number of challenges that questioned the wisdom, but not the legal validity, of the proposals. The objections committee, however, sustained at least one objection to each of the proposals.

With respect to the retention proposal, the objections committee unanimously sustained an objection that the text of the retention petition was "misleading" and therefore "legally insufficient." At the hearing, it was undisputed that the text of the retention proposal petition as circulated and signed by the electors contained erroneous references to the existing charter. The literal language in the petition repealed existing charter provisions related to the city attorney instead of the charter provisions relating to the police chief and city manager. If the retention proposal was enacted as written, the city charter would contain two competing provisions relating to the appointment and retention of the city manager (one in the existing city charter and one contained in the retention proposal) and no charter provision related to the appointment of the city attorney. Objectors argued that under this state of affairs, neither the signators of the petition nor the voters in the election, if held, would understand what was at stake if the retention proposal were adopted.

On both the PCRB proposal and the community policing proposal, the objections committee voted 2-1 to sustain an objection that the proposal was "legally insufficient" because the substance of the proposal was not a proper subject for a city charter and should, instead, be the subject of a city

ordinance. The action was based, at least in part, on advice from the city attorney, who opined that matters related to "form of government" were properly included in a city charter, but that matters related to the operations of a specific department should not be enacted as charter provisions but instead addressed in city ordinances.

Plaintiffs filed an application for writ of mandamus in district court, praying that the court order the city council to submit the proposed amendments to the voters of Iowa City at a special election. The district court ruled that mandamus was not the proper remedy and granted the City's motion for summary judgment. On appeal, the court of appeals affirmed, but remanded the case to allow the plaintiffs to amend to allege a certiorari action.

On remand to the district court, the plaintiffs amended their petition to seek a writ of certiorari. The City filed a counterclaim seeking a declaratory judgment that the proposed amendments were contrary to Iowa law and, as a result, no election needed to be held. The district court granted summary judgment for the plaintiffs, holding that the objections committee had exceeded its statutory authority. The City sought expanded findings to obtain a ruling on its petition for a declaratory judgment. The district court expanded its ruling and denied the City relief, holding that the issues raised were not ripe for judicial review. The City filed a timely appeal.

## II. Standard of Review.

This is a review of a ruling granting plaintiffs' motion for summary judgment and denying the defendants' cross motion for summary judgment. Review is for errors at law. *Bushby v. Washington County Conservation Bd.*, 654 N.W.2d 494, 496 (Iowa 2002).

**III.  Discussion.**

**A.  Authority of the Objections Committee to Sustain Objections to Charter Proposals on Grounds of "Legal Insufficiency."**  On appeal, the City first claims that the objections committee acted properly in sustaining objections to each of the three charter proposals, and, as a result, the district court erred in ruling that the proposals should be placed before the voters.  The City concedes that under Iowa law the objections committee has no power to reject proposed charter amendments based upon their perceived lack of merit.  The City claims, however, that the objections committee is empowered to review proposed charter amendments generated by petition for what it calls "legal sufficiency."

As is generally true in law, it is the substance and not the label that is important.  "Legal sufficiency," according to the City, includes authority to reject a proposal, like the retention proposal, which is "misleading" in nature.  The City further asserts that the objections committee is authorized to reject as "legally insufficient" charter amendments that do not deal with "form of government," but only with the manner in which government power is exercised.  The City argues that because the PCRB proposal and the community policing proposal do not deal with "form of government," the objections committee acted lawfully in rejecting the proposals as legally insufficient.

We disagree.  Iowa Code section 362.4 states that a petition to amend a city charter is "valid" if it has the requisite number of signatures of eligible electors including their place of residence and the date on which they signed.  There are no other statutory requirements for validity of a proposed charter amendment.  Our legislature, moreover, has directed that if a petition meets these two statutory requirements, it is "valid" under section

362.4 and the city council "must" submit the proposed amendment to the voters. Iowa Code § 372.11(3).

While there are no Iowa cases directly on point, other courts have repeatedly and routinely limited review by city officials of citizen petitions that trigger election processes based upon the plain language of the applicable law. *See, e.g., Farley v. Healey*, 431 P.2d 650, 652 (Cal. 1967) (city officials must place on ballot initiative in compliance with formal requirements unless otherwise directed by a court); *Gaines v. City of Orlando*, 450 So. 2d 1174, 1177 (Fla. Ct. App. 1984) (governing body must place initiative on ballot notwithstanding advice from city attorney as to their substantive validity); *Heidtman v. City of Shaker Heights*, 119 N.E.2d 644, 652 (Ohio Ct. App. 1954) (city council cannot reject petition meeting all applicable provisions of city charter and statutes); *Glass v. Smith*, 244 S.W.2d 645, 648 (Tex. 1951) (city council cannot fail to perform ministerial duties based upon opinion of legal invalidity provided by city attorney); *Arenas v. Bd. of Comm'rs of the City of McAllen*, 841 S.W.2d 957, 959 (Tex. Ct. App. 1992) (city officials must call an election, despite the advice of the city attorney that initiative was legally insufficient, where all procedural requirements were met and election is the only remaining option). Our holding in this case that city officials cannot engage in substantive review beyond that expressly authorized by applicable statutes is thus well within the mainstream of municipal law.

The City seeks to avoid the plain meaning of Iowa Code section 362.4 with a structural argument. The City argues that any approach limiting the authority of the objections committee to the specific criteria in Iowa Code section 362.4 illogically creates a redundant review structure. According to the City, the city clerk reviews the petitions for compliance with Iowa Code

section 362.4. The City claims that the legislature could not have intended the objections committee to duplicate the clerk's review by applying the same statutory criteria.

We disagree with the City's contention that the statutory structure overrides the plain meaning of the statute for two reasons. First, the two levels of review established by Iowa Code section 362.4 are not redundant, but are in fact quite different. Review by the city clerk for "validity" under Iowa Code section 362.4 is limited to an intrinsic facial review of the four corners of the petition. In contrast, the objections committee could consider extrinsic evidence produced at a public hearing tending to show, for instance, that the addresses listed for electors who purportedly signed the petitions were nonexistent, that the purported electors could be found only in graveyards, or that the electors who signed the petitions no longer resided in the city. Second, to the extent the reviews of the city clerk and the objections committee are similar, it would not be irrational for the legislature to establish a second level of review by a multi-member committee in the event of an objection.

Indeed, to the extent there are structural arguments, they cut against the City's position. The objections committee is comprised of the city clerk, the mayor, and a member of the city council. The objections committee is not comprised of members who ordinarily have expertise in the resolution of legal issues. The composition evinces a legislative intent that the objections committee serve as a fact finder, not a court of law.

Finally, the City seeks refuge from the plain meaning of Iowa Code section 364.2 by citation to prior authority. None of the cited cases, however, involved a determination by an objections committee of whether a petition is "valid" under the narrow command of Iowa Code section 362.4.

Further, all of the cases involved judicial intervention in different statutory and factual contexts. *Petersen v. Davenport Cmty. Sch. Dist.*, 626 N.W.2d 99, 103–04 (Iowa 2001) (wording of petition allegedly not in compliance with Iowa Code section 257.18(2)); *Hinders v. City of Ames*, 329 N.W.2d 654, 655 (Iowa 1983) (question of compliance with Iowa Code section 388.2); *Honohan v. United Cmty. Sch. Dist.*, 258 Iowa 57, 61–62, 137 N.W.2d 601, 604 (1965) (Iowa Code section 296.2 requires that a petition specify the purpose for which indebtedness is created).

In summary, we agree with the district court that the objections committee exceeded its statutory authority when it sustained objections to the charter proposals based on grounds other than "validity" under Iowa Code section 362.4. As a result, the actions of the objections committee did not provide the city council with a lawful basis for refusing to place the proposed charter amendments on the ballot at a special election.

**B. Ability of City to Mount Preelection Challenge to Substantive Legality of Proposed Charter Amendments.**

*1. The issues of who and when.* The fact that the objections committee and the city council may not prevent a charter amendment petition from being placed before the voters based upon criteria other than that established by Iowa Code section 364.2 does not end this controversy. The City asserts that even if the objections committee exceeded its authority, the City may launch a broadly framed preelection attack in district court challenging the legality of the proposed charter amendments.

The City's argument presents two closely related preliminary issues. The first question is whether the City has standing to challenge the potential validity of the proposed charter amendments. The second question is whether the City or any other party may bring a preelection

challenge to the legal validity of proposed charter amendments that have not been formally approved or rejected by the voters. This second question has often been characterized as a question of ripeness.

Questions of standing and ripeness raise delicate issues regarding the exercise of judicial power. On the one hand, state courts do not want to intervene too soon in legal matters by deciding abstract issues without a fully developed factual record made by parties with a strong motivation to illuminate the issues. On the other hand, state courts do not want to intervene too late, after legal rights have been irreparably harmed or where the potential benefits of a timely and authoritative judicial determination have been lost. The questions of who and when are often as important as what and why. *See generally* Helen Hershkoff, *State Courts and the "Passive Virtues": Rethinking the Judicial Function*, 114 Harv. L. Rev. 1833, 1843–44 (2001); Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1363–64 (1973).

2. *The issue of who: The doctrine of standing.* The thrust of the petitioners' standing argument is that that the City has no dog in this fight. Just as no city would be allowed to challenge the validity of an ordinance pending before the city council, the petitioners claim that the City cannot challenge the lawfulness of a proposed charter amendment. In the charter amendment process, the people stand in the shoes of the city council as the source of governing power. As a result, the petitioners claim that the City itself has not suffered an injury in fact and, in effect, that city hall should be a neutral bystander with respect to any legal issues presented in the proposed charter amendments.

The City counters that it should not be forced to incur the expense of an election over proposals that are, in its view, unlawful. In addition, the

City maintains that the appellants have failed to preserve the issue because the district court did not rule on standing and the appellants did not file a rule 1.944 motion to expand findings of fact and conclusions of law. *See generally* Iowa R. Civ. P. 1.944.

We disagree with the City that plaintiffs have not properly preserved the issue of standing. The City is certainly correct that normally a party must seek expanded findings to preserve an issue or claim submitted for adjudication but not resolved by the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002). This court, however, has long recognized "a distinction between successful and unsuccessful parties for purposes of error preservation." *Ritz v. Wapello County Bd. of Supervisors*, 595 N.W.2d 786, 789 (Iowa 1999). A party would have no motivation to move to expand the findings or appeal a successful verdict. As the successful party, the plaintiffs were therefore not required to file a rule 1.944 motion to obtain a double victory.

Finding no error preservation problem, we now turn to the standing issue. We have found no Iowa authority expressly addressing the question of a city's standing to litigate the lawfulness of proposed charter amendments. In *Polk County Board of Supervisors v. Polk County Charter Commission*, 522 N.W.2d 783 (Iowa 1994) [hereinafter *Polk County*], this court addressed the merits of a preelection declaratory judgment action brought by the county and the board of supervisors challenging the validity of a proposed Commonwealth Charter. The parties did not raise the issue of the standing of the county or the board.

Standing has been defined to mean that a party must have " 'sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of the controversy.' " *Birkhofer ex rel. Johannsen v. Brammeier*,

610 N.W.2d 844, 847 (Iowa 2000) (quoting *Black's Law Dictionary* 1405 (6th ed. 1990)). We have held that in order to have standing a party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected. *Id.*

A number of courts in other jurisdictions have held that the potential expenditure of funds by a municipality in connection with a voter petition is sufficient to allow a city standing to litigate the underlying legality of proposed or existing ordinances or charter provisions. *City of Irvine v. Irvine Citizens Against Overdevelopment,* 30 Cal. Rptr. 2d 797, 799–800 (Cal. Ct. App. 1994); *Branca v. City of Miramar,* 634 So. 2d 604, 605–06 (Fla. 1994); *Kaulakis v. Boyd,* 138 So. 2d 505, 506–07 (Fla. 1962); *Housing & Redevelopment Auth. v. City of Minneapolis,* 198 N.W.2d 531, 535 (Minn. 1972); *City of Sequim v. Malkasian,* 79 P.3d 24, 26–27 (Wash. Ct. App. 2003). *But see City of Mishawaka v. Mohney,* 297 N.E.2d 858, 859–60 (Ind. Ct. App. 1973); *Slama v. Attorney General,* 428 N.E.2d 134, 137 (Mass. 1981).

While the City's pecuniary interest in this litigation may be comparatively small, it is no less substantial than the injury to an individual taxpayer who challenges the lawfulness of a statute. Taxpayers are almost universally acknowledged as having suffered sufficient injury in fact to confer standing. *Alons v. Iowa Dist. Ct.,* 698 N.W.2d 858, 865 (Iowa 2005) (noting "the well-established rule that 'a taxpayer may maintain an action in his own name to prevent unlawful acts by public officers which would increase the amount of taxes he is required to pay. . . .' " (quoting *Polk County v. Dist. Ct.,* 133 Iowa 710, 712, 110 N.W. 1054, 1055 (1907))); *see also* Comment, *Taxpayers' Actions: Public Invocation of the Judiciary,* 13

Wake Forest L. Rev. 397, 399–400, 402–03 (1977) (observing nearly every state confers standing on taxpayers).

We find that the City meets the two-pronged standing test of *Birkhofer*. The test is met because if unsuccessful in this litigation, the City will be required to expend funds on a special election. The expenditure of funds on a special election presents a concrete, tangible financial injury to the City that will result absent judicial intervention, but which will be avoided if the City prevails in this litigation. This potential cost of an unnecessary election is a special injury different and apart from general harm to the public.

*3. The issue of when: The doctrine of ripeness.* We have recognized that the question of ripeness in the context of an action for declaratory judgment is difficult. *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 474 (Iowa 2004); *Wesselink v. State Dep't of Health*, 248 Iowa 639, 643, 80 N.W.2d 484, 486 (1957). We have stated that the question is "whether the facts alleged show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment." *Citizens*, 686 N.W.2d at 474.

We have further observed in the municipal law context that rules authorizing declaratory judgments are broad and should be applied liberally. *Bechtel*, 225 N.W.2d at 330. The key to ripeness in a declaratory judgment setting such as the one before us is an "antagonist assertion and denial of right." *Id.* (citations omitted).

This court, however, has not provided clear guidance on the applicability of the ripeness doctrine in the context of citizen-initiated municipal elections. In *Mathews v. Turner,* 212 Iowa 424, 426–27, 236 N.W.

412, 413 (1931), the court considered a preelection attack on a proposed state constitutional amendment, but the issue of ripeness was not raised and was expressly reserved. A similar result occurred in *Richardson v. City of Jefferson*, 257 Iowa 709, 134 N.W.2d 528 (1965), where the district court granted a preelection injunction to prevent the City from presenting to the voters a revenue issue that would extend and improve a swimming pool. This court affirmed, but did not discuss the question of ripeness.

More recently, in *Polk County*, 522 N.W.2d at 783, the court considered the claims that a provision calling for the creation of a commonwealth mayors' commission violated the one person, one vote provisions of the Iowa and United States Constitutions and that other provisions of the proposed commonwealth charter did not comply with the public hearing and content requirements of Iowa law. *Id.* at 788–89, 794–96. In a concurring opinion, Justice Carter emphasized that the issues presented were ripe for review. *Id.* at 796. Like the *Mathews* and *Richardson* matters, however, *Polk County* has no value as a precedent on the ripeness issue as the issue was not raised in the litigation.

The subsequent case of *Citizens*, 686 N.W.2d at 470, presents a fact situation in the context of municipal government where we held that the controversy was not ripe. In *Citizens*, a nonprofit corporation brought a declaratory action objecting to a public improvement project that included a recreational lake and a public park. *Id.* at 472. The project was to be financed largely through the sale of revenue bonds, which had not yet been approved by the necessary governing bodies. *Id.* The court, citing ripeness concerns, refused to consider potential legal challenges to the project, emphasizing the contingent status of the project. *Id.* at 474–75.

The question of whether state courts should entertain facial challenges to ballot measures prior to an election generally raises an issue of judicial propriety, not jurisdiction. It is a question of prudence, not power. *Hessey v. Burden*, 615 A.2d 562, 574 (D.C. Cir. 1992); *Gaines*, 450 So. 2d at 1178; *Housing & Redevelopment Auth.*, 198 N.W.2d at 535.

Whether to exercise the judicial power to decide preelection challenges to ballot measures has been considered by a number of state courts, with mixed results. Nearly all state courts allow preelection challenges based on procedural compliance with statutory criteria governing the petition process such as validating the required number of signatures, etc. *See Herbst Gaming, Inc. v. Heller*, 141 P.3d 1224, 1228 n.8 (Nev. 2006) (and cases cited therein).

In addition, most state courts allow preelection challenges based upon subject matter or content restrictions for ballot measures established by constitution or statute. *Id.* at 1228 n.9 (and cases cited therein). The notion that courts engage in process and subject matter review of ballot matters prior to the election has support in the academic commentary. James D. Gordon III & David B. Magleby, *Pre-election Judicial Review of Initiatives and Referendums*, 64 Notre Dame L. Rev. 298, 298 (1989); Michael J. Farrell, *The Judiciary and Popular Democracy: Should Courts Review Ballot Measures Prior to Elections?*, 53 Fordham L. Rev. 919, 925 (1984). According to the commentary and the applicable cases, the function of the state courts in engaging in threshold legal review is to ensure that the electoral path is not clogged with proposals that fail to meet the basic requirements for gaining ballot access.

While state courts routinely serve as gatekeepers on issues of compliance with threshold ballot access requirements related to process

and content, many state courts decline to extend the gatekeeping function to include resolution of what are often termed "substantive challenges" to the lawfulness of proposals prior to the election. *See, e.g., Winkle v. City of Tucson*, 949 P.2d 502, 504 (Ariz. 1997); *City of Rocky Ford v. Brown*, 293 P.2d 974, 976 (Colo. 1956); *Coppernoll v. Reed*, 119 P.3d 318, 321–22 (Wash. 2005); *State of Wisconsin ex rel. Althouse v. City of Madison*, 255 N.W.2d 449, 455 (Wis. 1977). The rationale of these state courts is that because measures are often used to send a message to elected representatives, preelection review even of measures that are subsequently found invalid by a court may unduly infringe on free speech values. Gordon & Magleby, 64 Notre Dame L. Rev. at 312; M. Sean Radcliffe, *Pre-election Judicial Review of Initiative Petitions: An Unreasonable Limitation on Political Speech*, 30 Tulsa L.J. 425, 436–37 (1994).

In addition, where facial attacks on constitutional grounds are presented, the doctrine of necessity is implicated. Under the prudential rule of necessity, constitutional issues must not be resolved in advance of a strict necessity for deciding them. *Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 937, 103 S. Ct. 2764, 2776–77, 77 L. Ed. 2d 317, 331 (1983); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346, 56 S. Ct. 466, 482, 80 L. Ed. 688, 710 (1936) (Brandeis, J., concurring).

On the other hand, a number of state courts have held that substantive, facial challenges to the legality of legislative initiatives are subject to judicial determination prior to their adoption by the electorate under proper circumstances. Many states limit such substantive, facial preelection review to cases where the illegality is "clear," "compelling," or "manifest." *Alaska Action Ctr. v. Municipality of Anchorage*, 84 P.3d 989, 992 (Alaska 2004) (proper where "controlling authority" is present); *Legislature v.*

*Deukmejian*, 669 P.2d 17, 21 (Cal. 1983) ("clear showing of invalidity"); *In re Initiative Petition No. 360, State Question No. 658*, 879 P.2d 810, 814 (Okla. 1994) (discretion to consider substantive review where issues are "clear"). While these courts generally concede that judicial intervention to determine legal issues related to proposals pending, but not finally enacted by a *legislative body* would be improper, *citizen initiatives* are distinguished on the ground that, unlike legislative proposals, they are not subject to amendment prior to enactment and involve direct and indirect costs associated with the holding of elections. *Whitson v. Anchorage*, 608 P.2d 759, 762 n.5 (Alaska 1980); *Associated Taxpayers of Idaho v. Cenarrusa,* 725 P.2d 526, 532–33 (Idaho 1986) (Huntley, J., dissenting); *Wyoming Nat'l Abortion Rights Action League v. Karpan*, 881 P.2d 281, 289 (Wyo. 1994).

Some courts, however, reject the notion that there are degrees of illegality that affect the exercise of judicial review of ballot measures prior to the election. As noted by one court, it makes no difference whether a proposal is "clearly illegal" or just "illegal," as under either circumstance, the proposal is invalid. *Haumant v. Griffin*, 699 N.W.2d 774, 780 (Minn. Ct. App. 2005); *see also Citizens for Responsible Behavior v. Superior Ct.*, 2 Cal. Rptr. 2d 648, 653 (Cal. Ct. App. 1991).

Based on our review of the cases, we adopt the concensus view that a preelection challenge with respect to threshold process and content requirements for proposed municipal charter amendments should generally be considered ripe for adjudication. In this context, the issues do not relate to substantive validity of the proposal, but only to whether a particular proposal qualifies under applicable law for presentation to the voters. *Alaska Action Ctr.*, 84 P.3d at 992. In so holding, we are concerned not solely with the cost of a needless special election. *Utz v. City of Newport,*

252 S.W.2d 434, 437 (Ky. 1952). We believe the time and money citizens are willing to devote to political activity are valuable resources that should not be squandered on charter initiatives that fail to meet even threshold ballot requirements. *Am. Fed'n of Labor-Cong. of Indus. Org. v. Eu*, 686 P.2d 609, 615 (Cal. 1984). As a result, we hold that the issue of whether the three proposals contain charter material, or are related to "form of government," is ripe for review.

We next turn to the more difficult question of whether a preelection challenge to the substantive, facial validity of a proposed city charter amendment may be entertained. Even advocates of judicial restraint recognize that there are some cases where preelection judicial review of the substantive validity of underlying proposals is appropriate. *See, e.g.*, *In re Initiative Petition No. 358, State Question No. 658*, 870 P.2d 782, 791 (Okla. 1994) (Ovala, J., concurring) (noting that preelection judicial review is appropriate where constitutional law is "firmly settled" and "absolutely" condemns the proposal); Gordon & Magleby, 64 Notre Dame L. Rev. at 318 (advocating a circuit breaker exception allowing preelection substantive review in exceptional cases). We therefore reject the blanket rule that such challenges may never be considered.

We conclude that preelection review of the substantive facial challenge to the retention amendment, namely, that the retention proposal is inconsistent with various provisions of the city code, is ripe for review. In this case, there is no pending election. Where there is no pending election, judicial review may take its ordinary course without the shortcomings associated with an expedited review. *Indep. Energy Producers Ass'n v. McPherson*, 136 P.3d 178, 181 (Cal. 2006); *Brosnahan v. Eu*, 641 P.2d 200, 202 (Cal. 1982) (Broussard, J., concurring). Further, because the election

has not yet been scheduled, the harm to the political process will be minimal. Early judicial intervention may give the measure's proponents an opportunity to cure defects before time and money is expended on a doomed effort. Douglas C. Michael, *Preelection Judicial Review: Taking the Initiative in Voter Protection*, 71 Cal. L. Rev. 1216, 1217 (1983).

In addition, to timing matters, the substantive nature of the legal challenges does not prevent consideration of the legal issues at this time. The substantive facial challenge in this case presents an issue of law that is clear and not subject to serious dispute. *Alaska Action Ctr.,* 84 P.3d at 992; *Deukmejian*, 669 P.2d at 21; *In re Initiative Petition No. 360*, 879 P.2d at 814. Because fundamental and difficult issues of constitutional law are not involved, the rule of necessity lays dormant. As a result, we proceed to address the merits of the claim.[1]

### C. Threshold Issues and Substantive Merit of Charter Proposals.

*1. Inconsistency with state law.* The City attacks the retention proposal as substantively unlawful. The City claims that the retention proposal is contrary to provisions of Iowa law related to the appointment and retention of the city manager and the police chief. In considering this matter, we do not pass on the merits of proposed charter amendment. Our only task in the legislative home rule environment is to determine whether the proposal is consistent with state law.

The question of whether the City may determine the method of appointment and removal of city officials free from legislative interference

---

[1]Because the district court held that the City's declaratory judgment action was not ripe for review, it did not rule upon the substantive validity of each of the proposed amendments. This court is thus left with the choice of remanding the case back to the district court or deciding the additional issues itself. "Where . . . the additional issues have been fully briefed and argued in this court, we conclude that it is in the interest of sound judicial administration to decide these issues here." *Barnes v. Iowa Dep't of Transp. Motor Vehicle Div.*, 385 N.W.2d 260, 263 (Iowa 1986).

has been a topic of discussion in municipal governance. As early as 1953, a model constitutional provision advanced by city advocates reserved the right to structure the appointment and retention process to the cities. Am. Mun. Ass'n, Model Const. Provisions for Mun. Home Rule § 6 (1953) (as cited in George D. Vaubel, *Toward Principles of State Restraint upon the Exercise of Municipal Power in Home Rule*, 20 Stetson L. Rev. 5, app. 1 at 74 (1990)). At least three state constitutions currently have home rule provisions that expressly reserve the right of local governments to structure the appointment and retention process with respect to city officials. *See* Cal. Const. art. XI, § 5(b) ("It shall be competent in all city charters to provide . . . for . . . the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees . . . shall be elected or appointed. . . ."); Ill. Const. 1970 art. VII, § 6(f) ("A home rule municipality shall have the power to provide for its officers, their manner of selection, and terms of office only as approved by referendum or as otherwise authorized by law.") (as cited in *Clarke v. Village of Arlington Heights*, 309 N.E.2d 576, 577 (Ill. 1974)); Ohio Const. art. X, § 3 ("Every such charter shall provide the form of government of the county and shall determine which of its officers shall be elected and the manner of their election.").

The Iowa home rule amendment, however, does not reserve such power to municipalities. As a result, we turn to the Code to determine whether the retention proposal on its face is inconsistent with state law. If so, the proposed charter amendment would be invalid. *Goodell v. Humboldt County*, 575 N.W.2d 486, 500 (Iowa 1998); Iowa Code § 364.1.

The Iowa legislature has allowed the cities a degree of discretion in determining who appoints city officials. For example, Iowa Code section

372.13(4) provides that "[e]xcept as provided by state or city law," the city council appoints officers and employees and prescribes their duties, compensation, and terms. Thus, the first sentence of Iowa Code section 372.13(4) allows cities to provide for an appointing body other than the city council. *See Flowers v. City of Moline*, 622 N.E.2d 38 (Ill. App. Ct. 1993) (appointment powers distributed between city council and mayor). Regardless of who appoints city officers and employees and prescribes their duties, however, the second sentence of section 372.13(4) contains the unqualified statement that "[t]he appointment of a city manager must be made on the basis of that individual's qualifications and not on the basis of political affiliation." Iowa Code § 372.13(4).[2] Similarly, regardless of the appointing authority, the civil service code requires that the selection of all appointed officers and employees of cities must be based upon their "qualifications and fitness and for the good of the public service, and without regard to their political faith or party allegiance." *Id.* § 400.16.

The retention proposal in this case arguably conflicts with the spirit if not the letter of Iowa Code sections 372.13(4) and 400.16. The retention proposal injects an extraneous political process into the employment relations between the city manager and police chief and the appointing authority not related to job qualifications. We doubt that the proposed retention amendment is consistent with the legislative intent behind these Code sections. *Goodell*, 575 N.W.2d at 500.

More importantly, however, the legislature has addressed the issue of how these appointed officials may be terminated. In Iowa Code section

---

[2]Iowa Code section 372.13(4) states, "Except as otherwise provided by state or city law, the council may appoint city officers and employees, and prescribe their powers, duties, compensation, and terms. The appointment of a city manager must be made on the basis of that individual's qualifications and not on the basis of political affiliation." Iowa Code § 372.13(4).

372.15, the legislature has provided that "[e]xcept as otherwise provided by state and city law," the appointing authority has the power to remove the city officer. Pursuant to this provision, a city has the option of vesting removal authority in an entity or person other than the original appointing authority. Section 372.15, however, is qualified by the provision "but every such removal shall be by written order." The section further provides that the written order "shall give the reasons" for the dismissal. The officer is then entitled to a public hearing before the council on all issues connected with the removal. Iowa Code § 372.15.[3]

The very specific "but every such removal" language in Iowa Code section 372.15 is designed as a limitation on the city's power to remove public officers. *State v. Ciancanelli*, 121 P.3d 613, 614 (Ore. 2005) (stating the phrase "but every" describes exceptions or modifications). This statutory removal provision applies to all public officers regardless of the form of government that a city may choose to employ. *City of Des Moines v. Civil Service Comm'n*, 540 N.W.2d 52, 59–60 (Iowa 1995); *La Peters v. City of Cedar Rapids*, 263 N.W.2d 734, 736–37 (Iowa 1978). While Iowa Code section 372.15 does not require that the appointing authority demonstrate that removal was for cause, *Bennett v. City of Redfield*, 446 N.W.2d 467, 473 (Iowa 1989), it does mandate that a public officer have notice of the reasons

[3]Iowa Code section 372.15 states,

Except as otherwise provided by state or city law, all persons appointed to city office may be removed by the officer or body making the appointment, but every such removal shall be by written order. The order shall give the reasons, be filed in the office of the city clerk, and a copy shall be sent by certified mail to the person removed who, upon request filed with the clerk within thirty days of the date of mailing the copy, shall be granted a public hearing before the council on all issues connected with the removal. The hearing shall be held within thirty days of the date the request is filed, unless the person removed requests a later date.

Iowa Code § 372.15.

for termination and the opportunity to be heard before the appointing authority.

The retention proposal provides for removal of the city manager and the police chief through a vote of the people, *without* written notice, *without* a statement of reasons, and *without* a hearing before the city council. These three procedural omissions are fatal to the proposed charter amendment. Iowa Code § 364.6 ("A city shall substantially comply with a procedure established by state law for exercising a city power."). Removal under the retention amendment does not involve deliberation of elected representatives that is at the heart of representative democracy which our legislature has chosen to prescribe. *State ex rel. Connie v. Hunter*, 117 A. 548, 549 (Conn. 1922) (applying referendum to appointment and removal of city manager would defeat system of putting business affairs in hands of trained expert rather than a popular favorite); *State ex rel. Becker v. Common Council of City of Milwaukee,* 305 N.W.2d 178, 182–83 (Wis. Ct. App. 1981) (initiative for removal of police chief violates state statute vesting authority in board).

The petitioner's sole defense of the retention proposal is that it might be interpreted in a fashion that would allow the city manager or the police chief to remain in office after a negative vote in a retention election. The defense has two thematic variations. First, the petitioners suggest that a negative retention vote might not require the removal of the official in question, but may be regarded as advisory only. Second, the petitioners suggest that even if the proposal were interpreted as requiring the removal of an officer that failed to prevail in a retention election, the City could simply reappoint the official.

We reject the contention that the proposed charter provision may be saved by characterizing the retention election as merely advisory. The retention proposal expressly states that the appointment of the city manager and the police chief "shall be subject to" a "retention" election. The term "shall" is mandatory. Iowa Code § 4.1(30)(*a*) ("The word 'shall' imposes a duty."); *State v. Klawonn*, 609 N.W.2d 515, 521 (Iowa 2000) ("the word 'shall' does not mean 'may' "); *State v. Luckett*, 387 N.W.2d 298, 301 (Iowa 1986) (use of the word "shall" connotes mandatory action). The phrase "subject to" means "governed by" or "dependent upon." *Util. Cost Mgmt. v. Indian Wells Valley Water Dist.,* 36 P.3d 2, 7 (Cal. 2001); *Mayor of City of Lansing v. Michigan Public Serv. Comm'n*, 680 N.W.2d 840, 843–44 (Mich. 2004). Retention means a "state of being kept in place." *Webster's Third International Dictionary* 1938 (unabr. ed. 2002). Given this unambiguous language, we will not twist the plain meaning of the retention proposal beyond recognition to suggest that it merely authorizes a public opinion poll on the performance of the police chief and city manager. *State v. Welton*, 300 N.W.2d 157, 160 (Iowa 1981). Similarly, we will not distort the plain meaning of the proposal to allow an officer who was not retained to be immediately rehired, thereby converting the retention election into a straw poll.

The retention proposal also contains a provision requiring yearly job evaluations of the city manager and the police chief. The City does not directly attack this aspect of the retention proposal. On the other hand, the retention proposal does not contain a severability clause and the petitioners have not asked us to sever any remaining lawful portions of the retention proposal. *Cf. Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 174 (Iowa 2004) (in the context of statutory severance, this court has held that severance "is

appropriate if it does not substantially impair legislative purpose, the enactment remains capable of fulfilling the apparent legislative intent, and the remaining portion of the enactment can be given effect without the invalid provision" (citations omitted)).

It is not clear that the doctrine of severance should apply in the context of preelection substantive review of a proposed municipal charter amendment. *Compare Bennett v. Drullard*, 149 P. 368, 370 (Cal. Ct. App. 1915) (refusing to allow severability as not germane to the will of the electorate); *Housing & Redevelopment Auth.,* 198 N.W.2d at 538 (severance not appropriate as court cannot determine intent of signators if some portions invalid); *State ex rel. Hazelwood Yellow Ribbon Comm. v. Klos*, 35 S.W.3d 457 (Mo. Ct. App. 2000) (rejecting severability because it is impossible for court to determine what petition drafters or signators intended), *with McAlpine v. Univ. of Alaska*, 762 P.2d 81, 94 (Alaska 1988) (allowing severability because the court's duty in conducting preelection review is akin to review of an enacted statute); *City of Colorado Springs v. Bull*, 143 P.3d 1127, 1138 (Colo. Ct. App. 2006) (deciding that unlawful portions of proposed initiative should be severed from remainder of ballot initiative).

In any event, even if the doctrine of severance did apply, it would not be the proper approach in this case. Where the main portions of a citizen petition are invalid, the remainder should not be sent to the voters in redacted form. *McAlpine*, 762 P.2d at 95 n.26; *Alexander v. Mitchell*, 260 P.2d 261, 268 (Cal. Ct. App. 1953); *Fossella v. Dinkins*, 485 N.E.2d 1017, 1019 (N.Y. 1985). "[T]o separate the good from the bad and permit the submission to the voters of a maimed and worthless thing would be folly."

*McCabe v. Voorhis*, 153 N.E. 849, 853 (N.Y. 1926). As a result, we hold that no part of the retention proposal should be submitted to the voters.

Having found that the retention proposal is invalid because of its conflict with Iowa law regarding the appointment and removal process of city officials, we do not decide the question of whether the erroneous citation to charter provisions in the petition is a basis for legal challenge.

2. *Threshold Limitation of Charter Amendments to "Form of Government."* The City attacks the PCRB proposal and the community policing proposal on the sole ground that the proposals do not contain proper charter material. The City zealously argues that only matters related to "form of government" may be subject to proposed ballot amendments. According to the City, the content of charter amendments is limited by Iowa Code section 372.9 to amendments that relate to the "form of government." Iowa Code section 372.9 states that "[a] city to be governed by the home rule charter form shall adopt a home rule charter in which its form of government shall be set forth." The City raises no other challenge to the validity of these proposed charter amendments.

In considering the meaning of the term "form of government," we must consider relevant legislative history. Prior to 1975, Iowa Code section 372.10 stated that a home rule charter must contain "and is limited to" five specific provisions related to the structure of city councils, the manner of holding elections, and the duties of the city council and city officers. As a result of this strict language, the contents of a city charter prior to 1975 were severely limited. In 1975, however, the legislature opened Iowa Code section 372.10 by deleting the phrase "and is limited to." 1975 Iowa Acts ch. 203, § 22.

The City contends that the legislative purpose behind this amendment was modest. According to the City, lifting the strict limitations in charter content was not designed to allow any imaginable law, policy, practice, or procedure to become part of the charter, but only to expand the potential *form of government* provisions that cities might choose to employ in light of the passage in 1968 of the home rule amendment to the Iowa Constitution. Iowa Const. art. III, § 38A.

The plaintiffs, in contrast, reject the limitation of city charters to content involving "form of government." They argue that the 1975 amendment to Iowa Code section 372.10 dramatically expanded permissible charter content. Further, they note that under Iowa Code section 372.2, the "form of government" of a municipality may be changed only every six years. This provision, appellants argue, implies that charter amendments that do not involve "form of government" may be offered at any other time.

There are no Iowa cases dealing with this precise issue. The closest case cited by the parties is *City of Clinton v. Sheridan*, 530 N.W.2d 690, 692 (Iowa 1995). In this case, however, the issue was whether a proposed referendum dealing with various building codes was consistent with state law. The issue of potential restrictions on charter content arising from the use of the term "form of government" was not presented and, of course, not decided in that case. In dictum, the court suggested that the amendment to Iowa Code section 372.10 was designed to "allow the home rule charters to include the broad powers to determine local affairs and government. . . ." *City of Clinton*, 530 N.W.2d at 694.

When the legislature amended Iowa Code section 372.10, it did not alter Iowa Code section 372.9, which provides that a city may adopt a home rule charter "in which its form of government is set forth." The legislature's

inclusion, moreover, of the phrase "form of government" in Iowa Code section 372.9 was deliberate. *Ashby v. Sch. Twp. of Liberty*, 250 Iowa 1201, 1214, 98 N.W.2d 848, 858 (1959) ("A cardinal rule of statutory construction is that, if reasonably possible, effect should be given every part of a statute."). We view this language as establishing the kind of material or subject matter that may be contained in a city charter. The 1975 amendment was designed to permit more experimentation with respect to form of government, while not abandoning the preexisting "form of government" limitation. *In re Barry*, 720 A.2d 977, 979 (N.H. 1998) (New Hampshire Constitution allows city charter to include various forms of government, but does not grant municipality unbridled authority to amend its charter to include retirement plan provisions); *Cheeks v. Cedlair Corp.*, 415 A.2d 255, 261 (Md. 1980) (charter is vehicle for form of government which identifies, distributes, and restricts municipal power). To the extent that dictum in *City of Clinton* implies that material that does not relate to form of government may be included in the charter, it is disapproved.

We do not believe Iowa Code section 372.2 requires a different result. Iowa Code section 372.2 provides that unless otherwise provided by law, a city may not adopt a different "form of government" more often than once in a six-year period. We read Iowa Code section 372.2 to mean that a city may enact a fundamental change in its "form of government" (e.g. from city council/mayor, city council/city manager or commission to another form) every six years, but may tinker with less sweeping amendments at other times. *See Clarke*, 309 N.E.2d at 579 (distinguishing between amendments and total adoption or repeal of form of government); *Kelly v. Laing*, 242 N.W. 891, 892 (Mich. 1932) (distinguishing between amendments to charter and redraft of entire document). We do not read this section as authorizing

"non-form of government" amendments during the six-year cycle established by Iowa Code section 372.2.

Having determined that amendments to city charters must, as a matter of law, relate to "form of government," the next question is what subject matter falls within the ambit of the phrase. In the context of municipal charters, the term "form of government" has been said to refer to "fundamental" provisions that provide "a broad organizational framework establishing the form and structure of government." *Cheeks*, 415 A.2d at 261. Another formulation suggests that a municipal charter is a plan that establishes the structure of local government and constitutes "nothing more than the machinery by which the powers and responsibilities of government may be executed. . . ." *Holsclaw v. Stephens,* 507 S.W.2d 462, 471 (Ky. 1973).

These general statements about what constitutes "form of government" are not always helpful, however, and the case law in other jurisdictions suggests that the phrase "form of government" is often defined more by what it does not include than anything else. A number of cases contrast charter provisions with ordinances, noting that a proposal to amend a charter cannot be an ordinance in masquerade. For instance, in *Cheeks,* 415 A.2d at 255, the court found that a charter amendment establishing a detailed rent control regulatory regime did not relate to "form of government," but instead amounted to substantive legislation that could not be included in a city charter. *See also Mayor & City Council of Ocean City v. Bunting,* 895 A.2d 1068, 1075–76 (Md. Ct. App. 2006) (charter amendment permitting police department employees to engage in collective bargaining held too specific and not related to broad organizational framework of government); *In re Initiative Petition No. 1 of Midwest City v.*

*Melton*, 465 P.2d 470, 472 (Okla. 1970) (proposed charter amendment requiring voter approval of ordinances affecting sale or transfer of real estate held too specific to be valid charter amendment). Under this line of authority, the more detailed a proposal and the more it establishes substantive policy instead of structure, the greater the likelihood that the proposal does not relate to form of government and does not qualify for inclusion in a city charter.

It also is clear that matters that are best characterized as administrative are not the stuff of valid charter proposals. Such matters do not even qualify as municipal ordinances that may be enacted through the initiative process, let alone enshrined as charter provisions. *See, e.g.*, *Jones v. Int'l Ass'n of Fire Fighters, Local Union No. 936*, 601 S.W.2d 454, 455–56 (Tex. Ct. Civ. App. 1980) (proposal must be legislative in character to qualify as a charter amendment); *Save Our Fire Dep't Paramedics Comm. v. City of Appleton*, 389 N.W.2d 43, 47 (Wis. Ct. App. 1986) (same). The rationale of these cases is that in order to allow for efficient administration of the city, administrative matters without sufficient generality and permanence should not be subjected to popular vote. *City of Wichita v. Fitzgerald*, 916 P.2d 1301, 1304 (Kan. Ct. App. 1996).

There is no clear method for determining whether a proposal to be placed before the electorate involves impermissible administrative matters. One test of whether a proposal is administrative in nature is whether it executes law previously established. *Wennerstrom v. City of Mesa*, 821 P.2d 146, 150 (Ariz. 1991); *City of Lawrence v. McArdle*, 522 P.2d 420, 425 (Kan. 1974). Matters that have been found administrative in nature, and thus not subject to being placed on the ballot as initiative measures, are proposals to reorganize special districts, measures concerning the acquisition,

construction, and regulation of penal facilities, a proposal regarding the use and placement of speed bumps, and a proposal for increased salaries for city employees. *Friends of Mt. Diablo v. County of Contra Costa,* 139 Cal. Rptr. 469 (Cal. Ct. App. 1977); *Murphy v. Gilman,* 204 Iowa 58, 62, 214 N.W. 679, 681–82 (1927); *State ex rel. Hazel v. Cuyahoga County Bd. of Elections,* 685 N.E.2d 224 (Ohio 1997); *Save Our Fire Dep't,* 389 N.W.2d at 43.

We embrace the general contours of the above cited authorities as consistent with the direction of our legislature. Under this approach, basic structural proposals truly involving the form, not the substance, of government are subject to voter approval through the charter amendment process. Matters of policy or administration, however, are to be processed through the ordinary channels of representative democracy with its Madisonian virtues. *The Federalist No.10* (James Madison) (advocating deliberation by representative bodies). Policy and administrative matters are thus subject to the give and take of the deliberative processes of representative government and are not to be implanted in a city charter by transient majorities.

Applying these above concepts, we hold that the PCRB proposal relates to the form of government under Iowa Code section 372.9 and is a permissible charter amendment under Iowa Code section 372.10. The PCRB proposal establishes a permanent body to investigate and make recommendations to the city council regarding police practices. The PCRB proposal does not invade the province of the city council by dictating particular law enforcement practices or by controlling budget priorities. It simply establishes a permanent entity to engage in public hearings, conduct investigations, and make recommendations to the city council. It is

involved primarily with government processes, not substantive law, and thus is an amendment involving "form of government."

We believe the PCRB proposal is a model of the kind of measure that the legislature's removal of limitations in Iowa Code section 372.10 was designed to allow. As a result, the district court order requiring this matter to be placed before the voters is affirmed.

On the other hand, we hold that the community policing proposal does not relate to form of government and therefore is an impermissible amendment to the charter. The community policing proposal declares that city police officers "shall" issue citations in lieu of arrest for most nonviolent misdemeanor offenses, "shall" notify persons of the existence of an arrest warrant unless there is a danger to the community or risk of flight, and "should" not engage in certain activities such as "knock and talks" or going as undercover agents in bars, restaurants, and other public places, and acting on certain anonymous tips. The community policing proposal further declares that enforcement of laws related to the possession of personal-use amounts of marijuana are not a "priority" of the City. As can be seen from the above description, the community policing proposal does not relate to a "form of government," but simply seeks to establish executive or administrative policy for the City with respect to law enforcement practices in a narrow category of crimes. As a result, the community policing proposal does not relate to "form of government" as required by Iowa Code section 372.9.

Our holding that a charter is not the place to cement executive and administrative policy for the enforcement of certain criminal laws does not leave the plaintiffs without a remedy. If the plaintiffs are dissatisfied with the manner in which city officials are making executive and administrative

decisions regarding the enforcement of nonviolent misdemeanors, they have a remedy through the ballot box when responsible city officials stand for election.

For the above reasons, we conclude that the community policing proposal does not involve "form of government." It is, therefore, not a valid charter amendment, and should not be presented to the voters.

## IV. Conclusion.

We find that the objections committee exceeded its statutory authority by rejecting the proposals as legally insufficient. The district court order granting plaintiffs' motion for summary judgment is affirmed.

We further hold that the City is entitled to a declaratory judgment that the retention and community policing proposals are inconsistent with Iowa law and, as a result, the City is under no obligation to place these matters before the voters. With respect to the PCRB proposal, however, we find that the City is not entitled to a declaratory judgment of invalidity and that the voice of the voters should be heard on this issue.

As a result, the district court order, which refused to grant the City declaratory relief on the retention and community policing proposals and granted the appellants relief on these issues is reversed. The district court order denying the City declaratory relief on the PCRB proposal and directing the City to place this proposal on the ballot is affirmed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**