Betty **FALADA**, Executor of the Estate of James Falada, Deceased, Appellant,

v.

**TRINITY INDUSTRIES, INC.**, Appellee.

No. 99–1945.

Supreme Court of Iowa.

Feb. 27, 2002.

Joseph P. Braun and Judith M. O'Donohoe of Elwood, O'Donohoe, O'Connor & Stochl, Cresco, for appellant.

Michael J. Coyle and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

LARSON, Justice.

James Falada was killed when an anhydrous ammonia tank ruptured. The executor of his estate sued Trinity Industries, Inc., manufacturer of the tank, alleging it was "defective in design and manufacture, [and] was unreasonably dangerous to the user or consumer when used in a reasonably foreseeable manner...." Trinity moved to dismiss on service-of-notice grounds and also moved for summary judgment, based on its claim the tank was damaged in a prior accident and that its construction was "state of the art" when manufactured. The court denied the motion to dismiss but granted the summary judgment motion on the state-of-the-art defense. We affirm in part, reverse in part, and remand.

## I. Facts and Prior Proceedings.

Falada was driving a truck pulling the anhydrous ammonia tank, which was mounted on wheels so that it was "trailerized." The truck and trailer rolled over, rupturing the tank. The rupture allowed ammonia to escape, and Falada died of ammonia inhalation. His wife, the executor of his estate, claims the tank was defectively manufactured.

Trinity moved to dismiss on the ground that the plaintiff did not serve an original notice within the time required by our

rule, but the court denied the motion. Trinity later moved for summary judgment on two grounds: (1) the tank had been in a prior accident that weakened its structure, and (2) the tank was manufactured in compliance with the state of the art as it was in 1971, when the tank was manufactured.

The plaintiff resisted the summary judgment motion with affidavits and engineers' reports. One expert stated the rupture was likely caused by defective welding in the manufacturing process. Another expert said the rupture was not caused by a prior accident, as claimed by Trinity.

## II. *The Service–of–Notice Issue.*

Trinity contends the district court abused its discretion by refusing to dismiss this case for failure to serve a timely original notice. Under Iowa Rule of Civil Procedure 49(f),

[i]f service of the original notice is not made upon the defendant, respondent, or other party to be served within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice as to that defendant, respondent, or other party to be served or direct an alternate time or manner of service. If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.

The petition was filed on April 10, 1998. On July 8, the plaintiff served an original notice, but it was served on the wrong party. When notice was served on the correct party, the ninety days had passed, and Trinity moved to dismiss. The plaintiff's attorney resisted with an affidavit explaining that in May 1998 he received information from the Iowa Secretary of State's office that the registered agent for Trinity Industries, Inc. was a Lori Lake in Roland, Iowa. He served Lori Lake on behalf of Trinity. This, however, was the wrong Trinity. The district court ruled that the estate had shown good cause for the delay and denied the motion to dismiss, based on the erroneous information regarding the defendant's address. The court stated:

Service was obtained on the wrong Trinity Industries, Inc., on July 8, 1998. It was at that time that Plaintiff learned that the Trinity Industries, Inc., which was served was not the same Trinity Industries, Inc., contemplated in Plaintiff's Petition. Immediately after learning of this mistake, Plaintiff took steps to obtain service over the correct Trinity Industries, Inc. Service was obtained over the correct Trinity Industries, Inc., on July 21, 1998.

. . . .

The Court finds under the facts herein that Plaintiff has shown adequate justification for the delay in service. Likewise, Plaintiff made a meaningful attempt to locate and serve the Defendant.

We have said:

Our review of a district court ruling on a motion to dismiss for failure to serve in a timely manner an original notice pursuant to rule 49 is for correction of errors at law. In circumstances in which, as here, the district court has made findings of fact, those findings are binding on appeal unless they are not supported by substantial evidence.

*Carroll v. Martir,* 610 N.W.2d 850, 857 (Iowa 2000) (citation omitted).

■ Trinity complains that the plaintiff could have been more diligent within the ninety-day window for service. (The plaintiff did not serve process even on the first Trinity until the eighty-ninth day.) If the

estate had attempted service earlier in the allotted time, it would not have needed extra time, according to Trinity. The court noted that "a meaningful attempt to locate or serve" is required by our rules, citing *Dennis v. Christianson*, 482 N.W.2d 448, 451 (Iowa 1992), and found the plaintiff had "shown adequate justification for the delay in service." It found the plaintiff immediately served the correct party after learning of its error.

We believe substantial evidence supports the finding of adequate justification for the delay of service and therefore affirm on this issue.

### III. *The Summary Judgment Issue.*

■ The district court held there was a genuine issue of fact on the prior-accident defense but granted summary judgment to Trinity on the ground there was no disputed fact issue regarding its state-of-the-art defense. We review a district court's ruling on summary judgment for the correction of errors at law. *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2001).

> Summary judgment is appropriate where the moving party shows there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). In determining whether the moving party has met this burden, we view the record in the light most favorable to the party opposing the motion for summary judgment.

*Id.* The nonmoving party is entitled to every legitimate inference that can be reasonably deduced from the record. *Hansen v. Anderson, Wilmarth & Van der Maaten*, 630 N.W.2d 818, 822–23 (Iowa 2001).

The state-of-the-art defense is embodied in Iowa Code section 668.12:

> In any action brought pursuant to this chapter against an assembler, designer, supplier of specifications, distributor, manufacturer or seller for damages arising from an alleged defect in the design, testing, manufacturing, [etc.], a percentage of fault shall not be assigned to such persons if they plead and prove that the product conformed to the state of the art in existence at the time the product was designed, tested, manufactured, [etc.].

■ Although the plaintiff presented evidence that the rupture was caused by defective welding of the tank's seams, the court ruled this failed as a matter of law to establish an issue of material fact because "[w]hen a defect is proved to exist but is consistent with the state of the art, there is no liability," citing *Hillrichs v. Avco Corp.*, 478 N.W.2d 70, 76 (Iowa 1991), *abrogated on other grounds by Reed v. Chrysler Corp.*, 494 N.W.2d 224, 230 (Iowa 1992).

■ It is undisputed in the summary-judgment record that, in general, the design of the tanks, *i.e.*, a steel "hemisphere" welded to each end of the cylindrical body, was the accepted method of manufacturing such tanks in 1971. However, there is a distinction between "custom in the industry" and "state of the art." "Custom refers to what was being done in the industry; state of the art refers to what feasibly could have been done." *Chown v. USM Corp.*, 297 N.W.2d 218, 221 (Iowa 1980); *see also Mercer v. Pittway Corp.*, 616 N.W.2d 602, 622 (Iowa 2000); *Hughes v. Massey–Ferguson, Inc.*, 522 N.W.2d 294, 295 (Iowa 1994).

One of the plaintiff's experts, Larry D. Hanke, a professional engineer, stated that the welding of the tank sections was defective. He subjected samples of the steel to visual examination, electron microscopy, and chemical analysis. He concluded the steel met required specification and was

weldable, but Trinity's workmanship in welding the sections was defective. His report, made a part of the record in resistance to the defendant's summary judgment motion, stated:

The tank was manufactured from high-strength, quenched and tempered, steel plate. The plate material composition was consistent with ASTM A517, grade E pressure vessel plate material. This material is weldable, but requires appropriate welding practices to obtain optimum service performance. The failed seam weld exhibited high hardness, low ductility, and low toughness in the heat-affected zone. These conditions are due to less-than-optimum welding practices.

In addition to the undesirable mechanical properties for this weld, the weld configuration served to concentrate stresses at the weld toe of the head plate, i.e. the area of the weldment most susceptible to brittle fracture. The seam weld where the fracture occurred is a transition from the 0.400–in. thick shell to the 0.270–in. thick head. At the fracture, this change in section thickness is made in the weld metal. With this configuration, tension or bending across the weld concentrates stresses at the weld toe on the head side. A preferable practice is to thin the thicker plate to match the thinner plate, which removes the stress concentration from the more vulnerable weld area.

The combined effect of the mechanical properties at the weld and the weld configuration created a susceptibility to rupture at a lower magnitude of deformation than for a weld with optimum welding practices and configuration. That is, a weld with greater ductility and toughness may not have failed due to the damage sustained in this accident. Thus, the weld joint design and welding practices during construction of the tank

were significant contributors, and possibly the root cause, of the seam weld failure.

Trinity does not provide contrary evidence as to the cause of the rupture, except its claim of a prior accident.

According to Trinity, the plaintiff has conceded the design of the tank was consistent with the state of the art in 1971, but that is inaccurate. The plaintiff conceded only that the design in general complied with the state of the art; she did not concede that this particular tank had been manufactured in accordance with state of the art. Specifically, she did not concede that the welding of the steel components was state of the art. In fact, she asserts that the welding was improper and was the cause of the rupture.

Trinity counters that, if the *design* of a tank is consistent with the state of the art, any workmanship defects in assembling the tank parts is subject to the state-of-the-art defense. We disagree; defective design and defective workmanship are separate concepts. Here, the issue is whether the plaintiff has presented sufficient evidence to generate an issue of material fact on Trinity's state-of-the-art defense with respect to the workmanship in welding the steel parts together. The state-of-the-art defense refers to what "feasibly could have been done." *Chown,* 297 N.W.2d at 221. Trinity does not contend that satisfactory welding techniques were not feasible in 1971.

In *Dow Chemical Co. v. Royal Indemnity Co.,* 635 F.2d 379 (5th Cir.1981), an action was brought for losses sustained when a thin-shelled concrete dome collapsed during construction. Styrofoam ® blocks were used to support the dome during construction. The issue was whether the cause of the collapse could be considered a design defect or whether the

"welding" of the Styrofoam ® was a separate issue, one of workmanship. *Id.* at 388–89. *Dow* recognized that workmanship is not a part of design for liability purposes. The fifth circuit approved the district court's finding that

> the collapse of the dome was due to the failure of the subcontractor Dow's employees to perform the welding in accordance with these specifications ... which would constitute a failure of workmanship, not of design.

Although the *Dow* case involved an application of insurance principles, it supports our view that the fabrication *process* is not a part of the design of the item being produced.

In deciding whether a process is state of the art, the issue is not whether a concept (here, the attachment of steel ends to a steel cylinder) in general conforms to the state of the art but whether this particular tank "could reasonably and economically" have been made stronger at that time by proper welding. *See Chown,* 297 N.W.2d at 222; *see also Mercer,* 616 N.W.2d at 622; *Hughes,* 522 N.W.2d at 295. We must assume, for summary judgment purposes, that defective welding was the cause of the rupture. Contrary to Trinity's argument, the welding cannot be considered state of the art simply because it was integrated in a design that was generally considered to be state of the art (*i.e.,* a steel cylinder attached to steel end caps). If negligent welding of the tank parts cannot be the basis of liability, as Trinity argues, simply because the concept of attaching steel parts into a tank was state of the art, this would mean that even tanks joined together with putty would be considered state of the art. This clearly cannot be so.

We conclude summary judgment should not have been granted because the plaintiff generated genuine issues of fact with respect to Trinity's state-of-the-art and prior-accident defenses. We affirm in part, reverse in part, and remand for further proceedings.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**