# IN THE COURT OF APPEALS OF IOWA

No. 17-1018
Filed October 24, 2018

**ANDREW GERTH,**
        Plaintiff-Appellant,

**vs.**

**IOWA BUSINESS GROWTH, INC. and DAN ROBESON,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

        The plaintiff appeals from the district court's dismissal of his lawsuit for failing to serve the defendants within the ninety-day window required by Iowa Rule of Civil Procedure 1.302(5).  **AFFIRMED.**

        Erik S. Fisk (until withdrawal) and John F. Fatino of Whitfield & Eddy, PLC, Des Moines, for appellant.

        Gary R. Fischer and Abigail L. Thiel of Simpson, Jensen, Abels, Fischer & Bouslog, PC, Des Moines, for appellees.

        Heard by Danilson, C.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

Andrew Gerth appeals from the district court's dismissal of his petition at law alleging age discrimination, a hostile work environment, and retaliation against his former employer, Iowa Business Growth, Inc., and former supervisor, Dan Robeson.[1] At the defendants' request, the district court dismissed the action without prejudice for Gerth's failure to serve the defendants within ninety days of filing the petition, as required by Iowa Rule of Civil Procedure 1.302(5).

Gerth challenges the dismissal, but he does not dispute that the defendants were served outside of the ninety-day window. Gerth raises the following claims: (1) He argues the district court had the discretion to grant an extension even without a showing of good cause and should have done so. (2) Alternatively, he claims he established good cause for the delay. As part of this argument, he claims the ninety-day window for service did not begin until the clerk's office issued the original notice, which in this case occurred two days after Gerth initially filed the petition—making service late by one day rather than three. He also claims the district court should have, as part of its good-cause analysis, considered the extent his rights would be prejudiced by the dismissal. (3) Finally, Gerth claims that even if good cause is necessary for an extension and he did not establish it, dismissal was inappropriate because service was only late by three days or less and the defendants were not prejudiced by the delay.

---

[1] We refer to Iowa Business Growth, Inc. and Robeson collectively as the defendants.

**I. Background Facts and Proceedings.**

Gerth worked for the defendants from August 2014 until May 2016. While still employed by the defendants, Gerth filed a complaint with the Iowa Civil Rights Commission, and the commission issued a right-to-sue letter after termination of Gerth's employment, on September 9, 2016. A copy of the letter was sent both to Gerth and the defendants.

On September 20, before Gerth filed suit, the attorney for the defendants sent an email to Gerth's attorney informing him, "My client has authorized me to accept service of the Gerth petition when you file it."

Gerth filed the petition at law on November 15; the clerk's office issued the original notice on November 17.

According to an affidavit filed by Gerth's attorney, on December 1, he sent a letter to the defendants' attorney referencing the defense attorney's prior email stating he would accept service on behalf of his clients. Enclosed with the letter was a copy of the petition, original notice, and an "acknowledgement of service," which the defense attorney was asked to "execute . . . and return to [plaintiff attorney's] office for filing."

According to an affidavit filed by the defendants' attorney, neither the letter nor any of the attachments were ever received by his office.

Accordingly, defense counsel never responded to the December 1 letter, and no acknowledgement of service was filed.

No action was taken until February 15, 2017. On that date, "[b]ased upon a reminder system in [his] calendar, which erroneously identified the 90-day service deadline as February 17," Gerth's counsel called defense counsel and "left

a voicemail inquiring as to whether [he] had received the December 1, 2016 letter and would still agree to accept service of the lawsuit on behalf of the [d]efendants." Plaintiff's counsel maintains he spoke to defense counsel on February 15, while defense counsel swears that Gerth's counsel called at 4:57 p.m. and left a message asking for a return call, which defense counsel believes he returned "[p]romptly the next morning."

Either on the afternoon of February 15 or the morning of February 16, when the two counsel spoke, defense counsel reported he had not received the letter. Gerth then served the defendants on the morning of February 16.

The defendants filed a motion to dismiss, arguing the petition should be dismissed because Gerth failed to serve the defendants during the required ninety days, had not requested an extension during the allotted time, and had not shown good cause for the delay. Gerth resisted.

Following a hearing on the motion,[2] the court issued a ruling dismissing Gerth's petition. The court determined that because Gerth had failed to timely serve the defendants, "he [could] only avoid dismissal if he can show good cause." The court found that Gerth's basis for late service did not "meet the traditional standard for good cause." In reaching this conclusion, the court noted that it "believes that [defense counsel] did not receive the letter" and "does not doubt that [Gerth's counsel] believes it was sent." However, the court found there was insufficient evidence to show the letter was sent, as "there was no evidence of mailing procedures." Still, the court ultimately found that the unresolved issue with

---

[2] It appears the hearing was unreported.

the December 1 letter was immaterial, as "even if the letter was received, it is highly questionable whether it constitutes good cause" to "not follow up between December 1, 2016 and February 15, 2017 to determine if service had been accepted."

Gerth appeals.

## II. Standard of Review.

We review the district court's ruling regarding a motion to dismiss for correction of errors at law. *Crall v. Davis*, 714 N.W.2d 616, 619 (Iowa 2006). When the motion to dismiss is based upon delay of service, the district court may consider matters outside the pleadings, and we are bound by the court's factual findings if supported by substantial evidence. *Id.*

## III. Discussion.

Gerth does not dispute that he served the defendants outside of the ninety days required by Iowa Rule of Civil Procedure 1.302(5). However, he maintains the district court should not have granted the defendant's motion to dismiss; he raises a number of alternative arguments to support his position.

### A. Extension without Establishing Good Cause.

Iowa Rule of Civil Procedure 1.302(5) provides:

> If service of the original notice is not made upon the defendant . . . within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice as to that defendant . . . or direct an alternate time or manner of service. If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.

Gerth advances an interpretation of the rule whereby the court has the discretion to extend the time for service without first finding good cause. He argues the

district court was wrong not to apply his interpretation of the rule in this case. In support of his argument, Gerth relies upon a case from the Third Circuit in which the court, interpreting the federal rule,[3] found:

> Initially, we find that the plain language of the rule itself explains that in all cases, the court has the option of dismissing the action or extending time for service. The fact that the word "shall" is used along with the disjunctive "or" in the first clause indicates that the court has discretion to choose one of these options. As an exception to this general provision, the second clause notes that if good cause exists, the district court has no choice but to extend time for service. Thus, the logical inference that can be drawn from these two clauses is that the district court may, in its discretion, extend time even absent a finding of good cause.

*Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3rd Cir. 1995).

But here, the district court was asked to apply the applicable Iowa Rule of Civil Procedure—not the federal rule. And our supreme court has foreclosed the interpretation of the Iowa rule that Gerth advances. *See Meier v. Senecaut*, 641 N.W.2d 532, 541 (Iowa 2002) ("The type of action directed by the rule is to dismiss the action without prejudice, impose alternative directions for service, or grant extension of time to complete service for an appropriate period of time. Extension of time requires a showing of good cause" (citation omitted)); *see also Crall*, 714 N.W.2d at 619–20 (citing the court's previous decision in *Meier* and noting that

---

[3] The federal rule in question provides:
**Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.
Fed. R. Civ. P. 4(m).

Iowa Rule of Civil Procedure 49(f), which the court considered in *Meier*, was now rule 1.302(5)).

As neither we nor the district court are at liberty to overturn Iowa Supreme Court precedent, *see State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990), the district court did nor err in its determination that a finding of good cause was necessary in order to extend the deadline for service.

**B. Establishing Good Cause.**

Next, Gerth maintains that if a finding of good cause is necessary, the district court erred in its determination that he did not establish good cause for the delayed service.

His argument, as we understand it, contains several parts. First, he maintains we should calculate the ninety days for service from the date the clerk's office issued the original notice—November 17—rather than the date he filed the petition—November 15. Under his proposed calculation, Gerth's phone call to defense counsel about service on February 15 was then within the 90-day window for service (though service of the defendants on February 16 was still outside the window). Next, Gerth maintains that when it considered whether he had established good cause, the court should have considered both his conduct in trying to execute service and the prejudice he would suffer if the case was dismissed. He claims the limited delay in service combined with the fact that dismissing his petition may prevent him from having his claim ever decided on the merits should have led the district court to reach the conclusion that good cause has been established.

We consider each of Gerth's arguments in turn.

### 1. Ninety-Day Window.

Gerth maintains we should calculate the ninety-day window for service from the date the clerk's office issued the original notice—on November 17, 2016—rather than from the date he filed the petition—November 15, 2016. As we already stated, this is issue is not dispositive, as Gerth's service of the defendants on February 16 is undisputedly outside the ninety-day window of rule 1.302(5) even if we use his calculation.

According to Gerth, the clock for service should not begin until the original notice is issued. To begin, Gerth points out that rule 1.302(1) requires the original notice to contain, among other things, the "date of the filing of the petition." Here, the only date on either of the original notices Gerth received is the "issued" date of November 17.[4] Moreover, as rule 1.302(5) requires the party to serve the original notice, Gerth could not begin to comply with the rule until the original notice was issued—two days after the petition was filed. If we use November 15 as the date to the start the clock, Gerth had only eighty-eight days to complete service rather than the ninety days provided for in rule 1.302(5).

The question before us is what rule 1.302(5) means when it requires the other party "to be served within 90 days after filing the petition."

Pursuant to Iowa Court Rule 16.306(2), "A document is considered filed or presented at the time EDMS[5] has received it, unless the clerk of court returns it." At the time a document is electronically filed, "EDMS applies an electronic file

---

[4] There is no evidence in the record regarding why the original notice was not issued until two days after the petition was filed.
[5] EDMS means "the electronic document management system, the Iowa Judicial Branch electronic filing and case management system." Iowa Ct. R. 16.201(5).

stamp to the document reflecting the date or the date and time that the document was actually received by EDMS." Iowa Ct. R. 16.309(1)(a). Here, according to electronic file stamp on the petition, it was filed on November 15, 2016, at 3:05 p.m. We believe the clear meaning of the rules, which uses "filing" rather than "issued"—which was found on the original notice—and says "petition" but is silent as to the "original notice," requires the ninety-day clock on service to begin running on November 15. And while this effectively limited Gerth to eighty-eight days to execute service, this reduction does not lead us to question our understanding of the rules.

In *Concerned Citizens of Se. Polk Sch. Dist. v. City Dev. Bd.*, 872 N.W.2d 399, 400–01 (Iowa 2015), our supreme court was asked to determine whether the thirty days to file an appeal of a ruling began on the date the court filed its ruling or the date the electronic filing system transmitted a notice of the filing. The court recognized that the rule of appellate procedure requiring notice of appeal to be filed within thirty days of the filing of the final order or judgment did not change with the implementation of EDMS. *See Concerned Citizens*, 872 N.W.2d at 402 (citing Iowa R. App. P. 6.101(1)(b)). However, the court had to determine whether the filing of the court's order was completed when the order itself was filed or whether the transmission of the notice of filing was also a necessary part of the filing of the order. *Id.* at 402–03. In an argument analogous to the one being raised by Gerth, Concerned Citizens—the party who wanted the deadline to begin with the transmission of the notice of filing—argued

> the act of filing a court order under the new electronic filing system only begins with the act of electronically transmitting the document to the EDMS, [and] filing is not complete until the notice of filing is

> transmitted. Thus, it asserts that the time period to file an appeal from a court order does not commence until the notice of filing has been transmitted. Concerned Citizens further claims that the concept of fundamental fairness is better served when the thirty-day time period to appeal a court order commences from the time the parties are notified of that order. It points out that this starting point assures all parties actually receive a full thirty days to pursue an appeal.

*Id.* The court recognized that the implementation of EDMS had changed the process, insofar as the filing of the order and the notification from the clerk of the filing had, "[i]n the paper world," been "events that went hand-in-hand." *Id.* at 403. With EDMS, they were two separate events undertaken by the document management system. *Id.* However, the court ruled that the separation of the two events "does not preclude the rules governing appeals from continuing to use only the first step to begin the time to appeal." *Id.* In determining that the filing of the order was sufficient to start the clock, the court noted that ruling otherwise "would create an unwanted moving target," as "[t]he time to appeal a court order could change from case to case depending on the date the clerk completed a review of the filed order"; it could also "create confusion," because "the filing date recorded on the order and identified in the notice of filing would not necessarily be the filing date to commence the time." *Id.* at 404. The court acknowledged that its ruling could result in parties receiving less than thirty days to file an appeal but noted, "Our rule governing the time to appeal, however, does not exist to ensure a party is given a full thirty days to contemplate the filing of an appeal. Instead, it has been built upon the rationale that justice is better served by a clear and uniform starting point in all cases." *Id.* at 404–05.

Gerth is correct that the filing of the petition and the issuing of the original notice is a two-step process that may occur a number of days apart, but, as written, rule 1.302(5) requires only the first part of the process—the filing of the petition—to occur in order for the clock to begin running. Therefore, Gerth's ninety days to serve the defendants began on November 15, 2016, and expired on February 13, 2017.

### 2. Conduct of Parties.

Considering Gerth's actions as they fall within the established timeline for service, we must determine whether the district court erred in its determination that Gerth did not establish good cause for the delay in service.

To establish good cause, Gerth "must have taken some affirmative action to effectuate service of process upon the defendant or have been prohibited, through no fault of his [or her] own, from taking such an affirmative step." *Meier*, 641 N.W.2d at 542 (alteration in original) (citation omitted). "Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service have generally been waived as insufficient to show good cause." *Id.* (citation omitted). Additionally,

> [g]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in a timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances.

*Wilson v. Ribbens*, 678 N.W.2d 417, 421 (Iowa 2004) (citation omitted).

Here, assuming Gerth took the affirmative step of sending the December 1 letter asking defense counsel to accept service, this action alone is not enough

to establish good cause for delay. The district court found that the defendants' attorney never received the letter, so any "failure" to execute the acknowledgement of service and return the same to Gerth's attorney (after sending the initial email stating he would be willing do so) was not an attempt at evading service or misleading conduct. Moreover, even if the defense attorney did receive the letter and then chose not to follow through, Gerth's failure to take any other action prevents a finding of good cause. Gerth's call to the attorney to ask about service did not take place until after the ninety-day window for timely service had passed, and his "calendar glitch" does not provide a justification for the lack of follow through between December 1 and February 15. Gerth has offered no other explanation for the delay. Once Gerth did decide to serve the defendants personally—outside the ninety-day window—he was able to complete service within twenty-four hours without delay or difficulty. *Cf. Falada v. Trinity Indus., Inc.*, 642 N.W.2d 247, 249–50 (Iowa 2002) (affirming the district court's finding of good cause where the plaintiff did not attempt service until the eighty-ninth day and then served the wrong party based on erroneous information from the Iowa Secretary of State's office before ultimately serving the correct party outside of the ninety-day window). Additionally, Gerth did not seek an extension of time to serve the petition within the ninety-day requirement. *See Meier*, 641 N.W.2d at 542–43 (finding plaintiff failed to present substantial evidence of good cause when she did not seek an extension or directions from the court once service could not be accomplished).

Gerth argues that his sending the December 1 letter is sufficient to establish good cause, effectively shifting the burden to complete service onto the

defendants, as Gerth wants us to find defense counsel's lack of follow through to complete service prevents us from dismissing the plaintiff's case. We cannot do so. *See Mokhtarian v. GTE Midwest Inc.*, 578 N.W.2d 666, 669 ("Once a plaintiff files a petition, we believe it only appropriate that the plaintiff should bear the burden of ensuring that service of the original notice and petition on defendant is both proper and timely.").

### 3. Principle of Estoppel.

Gerth maintains that we must consider whether the result of dismissal is equitable in our determination of whether he established good cause for the delay. He asserts that it is not equitable here as, even though the court dismissed the action without prejudice, his substantive rights would be prejudiced due to the statute of limitations requiring his suit to be filed within ninety days of receiving his right-to-sue letter from the Iowa Civil Rights Commission. *See* Iowa Code § 216.16(4).

In *Rucker v. Taylor*, 828 N.W.2d 595, 601 (Iowa 2013), our supreme court recognized that its recent case law had "expanded the scope of good cause in two ways." "First, the case directed an inquiry into the role of the corresponding conduct of the parties in causing the plaintiffs to fail to timely serve the defendant." *Rucker*, 828 N.W.2d at 601. "Second, the case injected consideration of the principles of estoppel that seek to prevent unjust results." *Id.* In other words, "good cause must be considered in deciding to dismiss a petition for untimely service, and . . . this standard considers all the surrounding circumstances, including circumstances that would make it inequitable for a defendant to successfully move to dismiss." *Id.*

In *Wilson*, our supreme court considered whether an agreement not to effect timely service constituted good cause for delay in timely service. 678 N.W.2d at 421–42. The court ruled, "While we remain highly skeptical of the utility of agreements delaying service or extending the statute of limitations in pending litigation in the hope of settlement, . . . we hold such agreements may constitute 'good cause' under Iowa Rule of Civil Procedure 1.302." *Id.* at 422. In reaching this decision, the court considered its practice—before rule 1.302 was amended to require an extension upon a showing of good cause—of applying the doctrine of estoppel regarding the limitation of actions when the parties had entered into agreements regarding the delay of service. *Id.* at 423. While the court concluded such an agreement *could* constitute good cause, the court ultimately remanded to the district court to conclude whether it did, "[g]iven the dearth of factual findings in the record, including the lack of a finding of an agreement." *Id.*

Similarly, in *Rucker*, the court considered whether an implied agreement between the parties to delay service, based upon the parties' conduct of continuing to negotiate after the petition at law had been filed, could constitute good cause for delay. 828 N.W.2d at 601. The court determined that an implied contract did not exist, *see id.* at 602, and then "return[ed] to consider whether the circumstances of this case can nevertheless satisfy the good-cause standard of rule 1.302(5)," *id.* at 603. The court cautioned that "the substantive rights of a plaintiff can be at stake through the application of a statute of limitations" before advising, "it is important that the good-cause standard under rule 1.302(5) not be applied too narrowly." *Id.* The court ultimately affirmed the district court's determination that good cause existed for the delay, placing some blame on the

defendant's conduct of continuing to negotiate when they were aware the plaintiff was going to delay service, as their actions "reinforce[d] expectations by [plaintiff's] attorney that he did not need to take action to comply with the service rule." *Id.* In reaching this conclusion, the court noted, "Federal courts thus consider as a factor in their determination whether a dismissal would ultimately be prejudicial to the plaintiff, particularly when delay of service is a result of misleading conduct by the defendant." *Id.*

We recognize that *Rucker* requires us to examine "all of the surrounding facts to determine if they reveal 'understandable mitigating circumstances.'" 828 N.W.2d at 603 (citation omitted). But here, there is no question that Gerth and the defendants did not have an agreement—implied or otherwise—that service could be delayed, as Gerth's counsel and defense counsel had no contact during the ninety-day window. *Contra Feldhacker v. West*, No. 12-2003, 2013 WL 3855694, at *5–6 (Iowa Ct. App. July 24, 2013) (applying *Rucker* and concluding the district court was correct in its finding of good cause for delayed service because of plaintiffs' repeated attempts to serve process within ninety days and plaintiff counsel's frequent contact with the insurance adjuster trying to resolve the dispute within the service window). And we can ascribe no actions to the defendants that either misled Gerth or played a part in the ultimate delay of service to outside the 90-day window. In reaching this conclusion, we credit the district court's finding that the defendants' attorney never received the December 1 letter requesting that he acknowledge service. But even if the defense attorney had received the letter, while we believe it would be a closer call as to whether equitable principles would require a finding of good cause, Gerth's own failure to

take action for seventy-four more days cannot be ignored. *See Mokhtarian*, 578 N.W.2d at 669 ("Once a plaintiff files a petition, . . . [t]he plaintiff cannot rely on the opposing party to inform him or her that service was not sufficient under our rules of civil procedure and then argue the delay in service was justified by previously unsuccessful or legally insufficient attempts at service.").

We acknowledge that the dismissal of Gerth's action will likely prejudice Gerth's ability to have his case decided on the merits, but this result does not require us to find good cause where there is, in fact, none. We agree with the district court's determination that Gerth did not establish good cause for the delay of service.

### C. Other Sanction.

Finally, Gerth argues that even if he has not established good cause for the delay, dismissal of his action is too harsh of a sanction here. He argues the district court had the discretion to avoid the harsh result. However, Gerth does not suggest any alternative sanction.

Rule 1.302(5) provides that the court "shall dismiss without prejudice." *See* Iowa Code § 4.1(3)(1) (providing the word "shall," in statutes enacted after July 1971, "imposes a duty"); *In re Det. of Fowler*, 784 N.W.2d 184, 187 (Iowa 2010) ("[T]he word 'shall' generally connotes a mandatory duty."); *Berent v. City of Iowa City*, 738 N.W.2d 193, 209 (Iowa 2007) ("The term 'shall' is mandatory."); *State v. Klawonn*, 609 N.W.2d 515, 521–22 (Iowa 2000) ("The word 'may' can mean 'shall,' but the word 'shall' does not mean 'may.'"). And Gerth has not provided, and we have not found, any authority to support his claim that the district court can choose

a "sanction" other than dismissal without prejudice. We do not consider this argument further.

**IV. Conclusion.**

Because a finding of good cause is required before the court extends the period to timely serve the defendants, and because Gerth has failed to establish good cause for the delay, we affirm the district court's dismissal of Gerth's petition.

**AFFIRMED.**

Danilson, C.J., concurs; Doyle, J., concurs specially.

**DOYLE, Judge.**  (concurring specially)

Constrained by current precedent cited by the majority, I reluctantly concur. In my view, our jurisprudence is a bit antipodean.  On the one hand, we tout our preference to decide cases on their merits.  *See e.g., MC Holdings, L.L.C. v. Davis Cty. Bd. of Review*, 830 N.W.2d 325, 328 (Iowa 2013) ("Our legal process normally strives to resolve disputes on their merits."); *Peterson v. Eitzen*, 173 N.W.2d 848, 853 (Iowa 1970) ("We have often stated our strong preference for determination of cases on their merits.").  On the other hand, our appellate courts routinely uphold dismissals of cases for failure to follow technical rules.  I acknowledge that the "good cause" standard for justifying the failure to timely serve under Iowa Rule of Civil Procedure 1.302(5) has been relaxed a bit in recent years.  *See Rucker v Taylor*, 828 N.W.2d 595, 603 (Iowa 2013) ("Because the substantive rights of a plaintiff can be at stake through the application of a statute of limitations, it is important that the good-cause standard under rule 1.302(5) not be applied too narrowly.").  But we can do even more to temper the harshness of application of the rule.

> I agree with Justice Waterman when he suggested the rule be amended.
>
> I prefer to see cases resolved on their merits, and I think there is something to be said for amending our rule to conform to Federal Rule of Civil Procedure 4(m).  Under that rule, even if the plaintiff fails to show "good cause" for not serving the defendant by the deadline, the district court has discretion to extend the time for service.  *See* Fed. R. Civ. P. 4(m) (providing that, if a defendant is not timely served, the court "must dismiss the action without prejudice against that defendant *or order that service be made within a specified time*" (emphasis added)).

*Rucker*, 828 N.W.2d at 606-07 (Waterman, J., dissenting).  Additionally, I would go one step further by adding a prejudice component to the rule 1.302(5) analysis.

In other words, in the absence of "good cause" on the part of the plaintiff in failing to timely serve, I would require a showing of prejudice on the part of the defendant before dismissal would be warranted.

Here, the defendants were aware of Gerth's complaint filed with the Iowa Civil Rights Commission. A copy of the commission's case file is not a part of our record, but it can be assumed the defendants responded to Gerth's complaint as a copy of the right-to-sue letter was sent to the defendants and their attorney. Shortly after the right-to-sue letter was issued, the defendants' attorney, anticipating Gerth would file suit, emailed Gerth's attorney stating that he would accept service on behalf of his clients. Undoubtedly, the defendants were prepared to mount a vigorous defense to Gerth's suit. Gerth's suit was filed well within the ninety-day deadline to do so. It is highly unlikely that the defendants were caught off guard when served with the original notice and petition. Under the circumstances, can the defendants legitimately claim they were prejudiced by the fact the suit papers were served three days late? I think not. But, prejudice is not yet a part of the rule 1.302(5) analysis, and overturning supreme court precedent is beyond my pay grade. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent.").

As an aside, I note there is a discrepancy between rule 1.302(1) and the official original notice form. The date of the filing of the petition must appear on the original notice. *See* Iowa R. Civ. P. 1.302(1)(c) ("The original notice shall contain the following information: . . . The date of the filing of the petition."). Rule 1.1901 states: "The forms contained in the Appendix of Forms following this rule are for use and are sufficient under the Iowa Rules of Civil Procedure." Iowa R.

Civ. P. 1.1901. The rule 1.901 Form 1, Form of Original Notice for Personal Service, either in print or electronic form, contains no provision for inclusion of the date of the filing of the petition. As a practical matter, this should cause no real concern. The rules require the petition to be attached to the original notice, except if service is by publication. Iowa R. Civ. P. 1.302(1). Customarily, a filed-stamped copy of the petition is attached to the original notice. So, despite the form's infirmity, defendants are ordinarily aware of the date of the filing of the petition.