# IN THE SUPREME COURT OF IOWA

No. 18–1427

Filed October 18, 2019

**HEATHER YOUNG, DEL HOLLAND,** and **BLAKE HENDRICKSON,**

Appellants/Cross-Appellees,

vs.

**THE IOWA CITY COMMUNITY SCHOOL DISTRICT; CHRIS LYNCH,** Individually and in His Capacity as President of the Board of Directors and Director; **LaTASHA DeLOACH,** Individually and in Her Capacity as Director of the Iowa City Community School District; **BRIAN KIRSCHLING,** Individually and in His Capacity as Director of the Iowa City Community School District; and **PAUL ROESLER,** Individually and in His Capacity as Director of the Iowa City Community School District,

Appellees/Cross-Appellants.

---

Appeal from the Iowa District Court for Johnson County, Sean McPartland, Judge.

Plaintiffs appeal, and defendants cross-appeal, from portions of a district court order granting a summary judgment in plaintiffs' action for injunctive relief and damages arising from defendants' decision not to submit to the county election commissioner plaintiffs' ballot proposal regarding the demolition of a local elementary school. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Gregg Geerdes, Iowa City, for appellants/cross-appellees.

Andrew J. Bracken, Kristy M. Latta, and Emily A. Kolbe of Ahlers & Cooney, P.C., Des Moines, for appellees/cross-appellants.

**APPEL, Justice.**

In this case, we consider a series of claims arising out of the refusal of the Iowa City Community School District (school district or Board) to authorize the placement of a ballot issue at an election to be held on September 12, 2017, after a petition bearing over 2000 signatures had been timely filed with the Board. The ballot measure would have asked the voters whether they approved the demolition of Hoover Elementary School and the use of the proceeds for school district purposes.

After the Board refused to direct the county auditor to place the matter on the ballot in the upcoming election, the plaintiffs filed suit in district court. The plaintiffs sought a writ of certiorari, a writ of mandamus, injunctive relief, and damages against the school district and individual board members who voted against placing the measure on the ballot. The defendants answered and filed a counterclaim seeking declaratory relief.

The district court entered an injunction directing the defendants to place the matter on the ballot. Because absentee ballots had already been issued, the district court directed that the matter be placed on the next general election ballot following September 12. The district court granted the defendants summary judgment on the plaintiffs' claims for damages and any other relief.

The plaintiffs appealed. The plaintiffs seek reversal of the district court order declining to award damages for alleged violations of the United States Constitution.

The defendants cross-appealed. In their cross-appeal, the defendants claim that the district court erred in determining that, under state law, the school district was required to place the ballot measure supported by the petitioners on the ballot.

For the reasons expressed below, we conclude that the district court erred in granting the plaintiffs injunctive relief. We conclude that the defendants were entitled to summary judgment on all claims. As a result, we affirm in part, and reverse in part, the order of the district court. We remand the case to the district court for dismissal.

### I. Factual and Procedural Background.

**A. Factual Background.** In 2013, the board of directors of the Iowa City Community School District adopted a "Facilities Master Plan" (FMP). The demolition of Hoover Elementary School and the construction of a structure to become part of Iowa City High School on the former Hoover Elementary site was part of the FMP.

The school district sought voter approval of a $191 million bond issue to finance the execution of the FMP. The election was set for September 12, 2017. The school district intended to keep Hoover Elementary School open through the 2018–2019 school year after which it would be closed, the building demolished, and the site used for other purposes by Iowa City High School.

On June 29, 2017, the plaintiffs filed a petition with the school district seeking to require the district to also place on the September 12 ballot a narrow question. Specifically, the petition asked that the following question be placed on the September 12 ballot:

> Shall the Iowa City Community School District . . . demolish the building known as Hoover Elementary School . . . after the 2018-2019 school year, with the proceeds of any resulting salvage to be applied as specified in Iowa Code section 297.22(b)?

Prior to receipt of the petition, the school district sought the advice of counsel regarding the legality of the proposed ballot measure. In a letter dated June 22, 2017, the Board's counsel advised that the question the

petitioners sought to place on the ballot was not "authorized by law" under Iowa Code section 278.2(1) (2017). According to the June 22 opinion, the demolition of Hoover Elementary School was not a "sale, lease, or other disposition" of a schoolhouse subject to submission to the voters under Iowa Code section 278.1(1)(*b*). The opinion emphasized that while in 2008 the Iowa legislature amended the Code to define "dispose" or "disposition" to "include[] the exchange, transfer, demolition, or destruction of any real or other property of the corporation," the legislature deleted that provision the next year. According to the legal opinion, the legislative history "expresses a clear legislative intent to remove from the voters decision making authority over demolition of school district owned structures."

After receipt of the petition on June 29, the Board requested a supplemental and expanded opinion from counsel, which was provided in a letter dated July 6, 2017. The July 6 opinion repeated the legislative history cited in the original June 22 opinion but further cited definitions of dispose and disposition found in *Merriam Webster Law Dictionary* and *Black's Law Dictionary* as having the common denominator of "the transfer of ownership and control of property to another person or entity."

Further, the July 6 legal opinion noted that under Iowa Code section 278.1(1)(*b*), the voters must vote on the "application to be made of the proceeds." As a result, according to the opinion, a disposition involves a transaction for monetary gain. The FMP, however, included an estimated *cost* of demolition at $500,000. The July 6 legal opinion additionally noted that the possibility of placing any demolition before the voters would "hamstring a district's ability to properly manage and utilize its properties for the benefit of the school community."

Regarding proposed next steps for the Board, the July 6 legal opinion stated that it was "not wholly clear" how the Board should proceed

with the petition and recommended that the Board reject the petition as not "authorized by law," notify the county commissioner of elections of the filing of the petition and the Board's action, and direct that the measure not be on the ballot in September. In the alternative, the legal opinion stated that a member of the Board could file an objection to the petition under Iowa Code section 277.7.

After receiving the advice of counsel, the Board voted against placing the plaintiffs' narrow question on the September 12 ballot.

### B. Proceedings Before District Court.

1. *The plaintiffs' petition and the defendants' answer and counterclaim.* On July 17, 2017, the plaintiffs brought an action in district court seeking a writ of certiorari, a writ of mandamus, temporary and permanent injunctive relief, and declaratory relief. The plaintiffs also prayed for damages, attorneys' fees, interest, and court costs. The gist of the petition was that the defendants refused to submit a legally sufficient petition to the Johnson County Commissioner of Elections, thereby depriving the plaintiffs and voters of the opportunity to vote on the ballot measure. The defendants filed an answer generally denying the material allegations of the plaintiffs' petition.

The plaintiffs amended their petition on September 8 to include a claim for damages under 42 U.S.C. §§ 1983 and 1988. The defendants answered the amended petition and filed a counterclaim seeking declaratory relief. The defendants asserted in their counterclaim that the demolition of the school was not a disposition under Iowa Code sections 297.22(1) or 278.1(1)(*b*). Further, the defendants suggested that a vote rejecting the demolition of a school building at the direction of the voters would not constrain the Board from exercising its independent power to do so.

2. *Issuance of temporary injunction.* The district court held a hearing on the plaintiffs' application for temporary injunction on August 24, 2017. The plaintiffs argued, among other things, that they had established a likelihood of success on the merits, that the right to vote was threatened by the Board's actions and inactions, and that the balance of harms favored the entry of a temporary injunction placing the matter on the September 12 ballot and enjoining the defendants from demolishing Hoover until the referendum is held. The plaintiffs further asked that all early ballots filed for the September 12 ballot be invalidated as they did not present the ballot measure sought by the plaintiffs. The defendants responded that there was little likelihood that the plaintiffs would prevail on the merits, that they lacked standing to bring the action, that no right of action existed under applicable statutes, and that the public would be harmed if the Board was not allowed to conduct its business as planned.

On September 6, 2017, the district court entered its order on the temporary injunction matter. At the outset, the district court found that the plaintiffs had standing to seek enforcement of applicable statutes and that the plaintiffs had a private right of action to enforce them. The district court further concluded that the Board was legally constrained in its challenge to the petition by its failure to file an objection under Iowa Code section 277.7 and that it lacked authority to unilaterally determine the petition was unauthorized by law.

Turning to the question of whether a temporary injunction should be granted, the district court found that the plaintiffs demonstrated substantial injury or damages would result if an injunction was not granted. The district court granted the plaintiffs a temporary injunction requiring the Board to direct the Johnson County Commissioner of Elections to place the plaintiffs' ballot measure before the voters at the

next regular election. Further, the district court denied the plaintiffs' request to invalidate early ballots cast in connection with the September 12, 2017 election; to place the referendum on the September 12 ballot; or, in the alternative, to schedule a special election on the matter. Additionally, the district court declined to enter an injunction preventing the Board from demolishing Hoover, noting that there were no immediate plans to do so. Following the district court's temporary injunction, the voters in Johnson County approved the FMP at the September 2017 general election.

3. *Ruling on motions for summary judgment.* The parties filed comprehensive competing motions for summary judgment. In their summary judgment papers, the plaintiffs sought rulings from the district court that (a) the defendants violated state election laws; (b) the defendants violated both 42 U.S.C. § 1983 and § 1985; (c) no defendant has qualified immunity; (d) no defendant has absolute immunity; (e) the plaintiffs are entitled to damages that the court should calculate and assess against the defendants, jointly and severally, including actual, nominal, presumed substantial, and punitive, as well as attorneys' fees, interest, expenses, and court costs, or, in the alternative, schedule a hearing on damages; (f) demolition of a schoolhouse is a disposition of the same under all applicable statutes; (g) if a majority vote against the ballot measure, preservation is binding on the defendants; (h) the temporary injunction previously entered should be expanded and made permanent, the bond exonerated, and the plaintiffs given other appropriate relief to protect against further deprivation and dissipation of their constitutional rights; and (i) the affirmative defenses asserted by the defendants are without merit as a matter of law.

In turn, the defendants filed a generally mirror-image motion seeking summary judgment in the defendants favor on all issues raised by the plaintiffs. In addition, the defendants sought rulings from the district court that (a) the plaintiffs lack standing to litigate; (b) the plaintiffs do not have a private right of action under Iowa Code sections 278.1 or 297.22 to bring the action; (c) the term "disposition" does not include demolition of a school building; (d) the plaintiffs' claims are moot; (e) the plaintiffs' claims are time barred as the Board has approved the FMP; and (f) it is the role of the Board, and not the plaintiffs, to make decisions regarding demolition of a school building.

After a hearing, the district court entered an order on the motions for summary judgment on April 26, 2018. At the outset, the district court found that the plaintiffs were entitled to the remedy already provided under Iowa election law directing the Board to place the matter on the next general election ballot but denied any relief beyond that already ordered. As part of its order, the district court repeated its earlier conclusion that the term "disposition" within the scope of Iowa Code section 278.1(1)(*b*) encompasses demolition. Further, the district court extended its previous injunction to prohibit the Board from taking any steps to demolish or otherwise dispose of Hoover Elementary School prior to the vote.

The district court denied the plaintiffs summary judgment on their 42 U.S.C. §§ 1983 and 1985 claims. The district court held that there was no evidence in the record to support the plaintiffs' claims of violation of their right to vote or First Amendment rights. On their due process claims, the district court found that procedural due process was satisfied through the court hearing and action, as the plaintiffs have obtained the requested relief of having the proposition placed on the ballot. With respect to substantive due process, the district court concluded that nothing in the

record shocks the conscience of the court or interferes with rights implicit in ordered liberty. The district court further found no conspiracy to violate constitutional rights of the plaintiffs, noting that all the actions of the defendants were taken in connection with regularly held Board meetings and discussions were part of the Board's responsibilities.

The district court also considered the question of whether the defendants were entitled to qualified immunity. The district court concluded that the defendants were entitled to qualified immunity as a matter of law because they were not acting outside the clearly established scope of their discretionary authority.

The district court considered whether the vote on the ballot proposition submitted to the voters would be binding on the Board. In its narrative, the district court stated that a "yes" vote on the proposition would require the school district to proceed with demolition. Meanwhile, the district court indicated that if "no" prevailed, nothing in the language of the proposition would require preservation of the Hoover building. Yet, the district court ended its discussion by concluding that the binding nature and effect of an eventual vote was not ripe for adjudication.

4. *Additional ruling of the district court.* In its ruling on the motions for summary judgment, the district court asked the parties to make written submissions to the court regarding whether any issues remain open for resolution now and identifying what specific issues remain going forward for trial. The plaintiffs responded that the district court should make the injunction permanent and exonerate the cash bond posted by the plaintiffs, clarify its ruling regarding the impact of a no vote on the Board, and award the plaintiffs attorneys' fees and the costs of the action. The defendants responded that no further issues remained for trial and the

case could be closed. In response, the district court released the bond but denied further relief.

5. *Appeals.* The plaintiffs filed a timely notice of appeal of all adverse rulings. The defendants cross-appealed.

## II. Standard of Review.

We review rulings on motions for summary judgment for correction of errors at law. *Winger Contracting Co. v. Cargill, Inc.*, 926 N.W.2d 526, 535 (Iowa 2019); *Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 495 (Iowa 2019). Where constitutional issues are involved, however, review is de novo. *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 211 (Iowa 2018); *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 564 (Iowa 2011).

## III. Discussion.

## A. Meaning of "Disposition" Under Iowa Code Section 278.1.

1. *Introduction.* A threshold issue in this litigation is whether the district court was required to instruct the county auditor to place the plaintiffs' question raised in its petition on the November 2017 general election ballot. Two key provisions in the Iowa Code are controlling.

Iowa Code section 278.1 empowers voters of a school district to decide certain issues. Iowa Code section 278.1(1)(*b*) provides,

> The voters at the regular election shall have the power to []
>
> . . . .
>
> . . . direct the sale, lease, or other disposition of any schoolhouse or school site . . . and the application to be made of the proceeds thereof.

Iowa Code section 278.2 provides the manner in which citizens may place questions within the scope of Iowa Code section 278.1 on the ballot. In order for citizens to require the school board to place a question on the ballot under Iowa Code section 278.1, a petition conforming to the

standards outlined in Iowa Code section 278.2 must be presented to the school board with the signatures of the requisite number of voters. If such a provision is presented to the board, Iowa Code section 278.2 states that "[t]he board . . . shall[] direct the county commissioner of elections to provide in the notice of the regular election for the submission of any proposition authorized by law to the voters."

There is no dispute that the petition presented by the plaintiffs in this case has the requisite number of signatures. The fighting issue, however, is whether the plaintiffs' proposed ballot question concerns a disposition of property entitling them to present the issue to the voters.

2. *Preservation of statutory interpretation question in the district court.* The plaintiffs claim that the defendants failed to preserve in the district court the question of whether a demolition is a disposition under Iowa Code section 278.1(1)(*b*). The defendants raised the issue in their brief resisting the motion for injunction and again in their brief in support of summary judgment. The district court also explicitly ruled upon the issue in its findings of fact, conclusions of law, and ruling on application for temporary injunction and incorporated the ruling in its ruling on motions for summary judgment. We find the issue has been adequately preserved. *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("Where the trial court's ruling, as here, expressly acknowledges that an issue is before the court and then the ruling necessarily decides that issue, that is sufficient to preserve error."); *see also Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002) ("The claim or issue raised does not actually need to be used as the basis for the decision to be preserved, but the record must at least reveal the court was aware of the claim or issue and litigated it."); *Metz v. Amoco Oil Co.*, 581 N.W.2d 597, 600 (Iowa 1998) ("Our preservation

rule requires that issues must be presented to and passed upon by the district court before they can be raised and decided on appeal.").

The plaintiffs also assert that the defendants are not entitled to relief because they failed to file objections to the petition with the objections committee or failed to bring a declaratory action in district court after the plaintiffs presented their petition. *See Berent v. City of Iowa City*, 738 N.W.2d 193, 197–201 (Iowa 2007). This procedural question—akin to an exhaustion requirement—is separately considered in division III.B below.

3. *Positions of the parties.* The plaintiffs maintain that the term "other disposition" includes demolition of an existing school building. The plaintiffs point to *Webster's Third New International Dictionary*, which states that "disposition" includes "the act or the power of disposing" and "dispose of" means "to get rid of, throw away, discard." According to the plaintiffs, disposition in Iowa Code section 278.1(1)(*b*) includes action "to get rid of" of a building and "to get rid of" a building includes demolition. The plaintiffs assert they are using an ordinary rather technical approach to interpretation of the statute and cite *State v. Tarbox*, 739 N.W.2d 850, 853–54 (Iowa 2007) for that proposition.

The plaintiffs further note that under Iowa Code section 278.1(1)(*b*), the voters may direct the disposition of a "schoolhouse or school site." By including separate terms for schoolhouse and school site in the statute, the plaintiffs maintain that the legislature must have intended that the term "disposition" applies to disposition of a schoolhouse that does not involve disposition of the site; in other words, demolition of a schoolhouse absent sale of the underlying site.

The plaintiffs additionally assert that the school district is inconsistent in its treatment of the term "other disposition" (and "dispose of") in related statutes. The plaintiffs claim that the school district

interprets the term "dispose of" in Iowa Code section 297.22 (describing the power of the school board to "dispose of, in whole or in part, a schoolhouse, school site, or other property belonging to the district") to include demolition, but then interprets the term "other disposition" in Iowa Code section 278.1(1)(*b*) (describing the power of voters to "direct the sale, lease, or other disposition of any schoolhouse or school site or other property belonging to the corporation") to not include demolition.

Finally, the plaintiffs assert that to the extent the statute is ambiguous, it should be liberally interpreted to promote citizen access to the ballot. In support of their argument, the plaintiffs cite *Devine v. Wonderlich*, 268 N.W.2d 620 (Iowa 1978) (en banc). In *Devine*, this court emphasized the fundamental nature of the right to vote in elections for officeholders such as county supervisor. *Id.* at 623.

In contrast, the defendants claim that the demolition of a building is not an "other disposition" of property under Iowa Code section 278.1(1)(*b*). In support of their argument, the defendants argue that "other disposition" does not include demolition because the statute gives voters the power not simply to direct disposition of the property but also to direct "the application to be made of the proceeds thereof." Iowa Code § 278.1(1)(*b*). Demolition, the defendants note, is not a process that leads to proceeds.

The defendants do not shy away from a battle of dictionaries. The defendants point out that the *Merriam Webster Law Dictionary* defines "disposition" as "transfer to the care or possession of another" and "dispose of" as "to transfer to the control or ownership of another." Further, the defendants note that *Black's Law Dictionary* defines "disposition" as "[the] act of disposing; transferring to the care or possession of another" and "dispose of" as "to alienate or direct the ownership of property, as

disposition by will . . . to exercise finally, in any manner, one's power of control over; to pass into control of someone else; to alienate, relinquish, part with, or get rid of; to put out of the way; to finish with; to bargain away."

The defendants further note that the Iowa legislature in 2008 enacted legislation providing a definition of "other disposition" and "dispose of" for purposes of Iowa Code sections 278.1 and 297.22 that included "demolition." *See* 2008 Iowa Acts ch. 1148, §§ 1–2 (codififed at Iowa Code § 278.1(1)(*b*) and § 297.22 (2009)). This legislation, however, was repealed the following session. *See* 2009 Iowa Acts ch. 10, §§ 1–2, 4 (codified at Iowa Code § 278.1(1)(*b*) and § 297.22 (Supp. 2009)). According to the defendants, the history of the adoption and then rejection of a legislative definition of the term "disposition" that included demolition demonstrates a legislative intent not to include demolition within the scope of the statutes. *See Summerhays v. Clark*, 509 N.W.2d 748, 751 (Iowa 1993) (en banc) (finding that removal of a word from a statute indicates desire to narrow its scope).

The defendants note that the Board has broad and exclusive power to determine the location of a schoolhouse under Iowa Code sections 297.1 and 279.11. *See Kinney v. Howard*, 133 Iowa 94, 96, 110 N.W. 282, 283 (1907) (holding the relocation of the schoolhouse site "was a matter for the school board of the township" pursuant to Iowa Code sections 2773 (now section 297.1) and 2801 (1897) and could not be questioned by injunction). According to the defendants, the ability to determine that Hoover Elementary should be located at another location implies the ability to use its current location for other purposes, including demolition and use of the site for other school purposes.

Finally, the defendants assert that Iowa Code section 278.1(1)(*b*) should not be interpreted to vest the voters with the power of referendum for every demolition of school property. According to the defendants, under the plaintiffs' theory, any demolition of, say, a wall or a part of a building (as happens with renovations and routine maintenance) could trigger a voting process.

4. *Discussion.* If a statute is unambiguous, we look no further than the express language of the statute. *See State v. Howse*, 875 N.W.2d 684, 691 (Iowa 2016); *State v. Tesch*, 704 N.W.2d 440, 451 (Iowa 2005). If the statute is ambiguous, however, we use a variety of methods, including traditional tools of statutory construction, to determine the meaning of the statute. *State v. Doe,* 903 N.W.2d 347, 351 (Iowa 2017); *State v. Nall*, 894 N.W.2d 514, 518 (Iowa 2017).

A statute is ambiguous if "reasonable minds could differ or be uncertain as to the meaning of a statute." *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995); *see also State v. McIver*, 858 N.W.2d 699, 703 (Iowa 2015). Further, we have stated that "[w]ords are often chameleons, drawing their color from the context in which they are found." *Rolfe State Bank*, 794 N.W.2d at 564. Ambiguity may arise not only from words themselves but "from the general scope and meaning of a statute when all its provisions are examined." *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996).

Upon our review of Iowa Code section 278.1(1)(*b*), we conclude the term "other disposition" is ambiguous. It certainly could reasonably be interpreted to include demolition of buildings. On the other hand, in context, it could also reasonably be interpreted to include transactions involving only the transfer or exchange of ownership of schoolhouses, school sites, and other school district property, but not mere demolition.

We do not find a number of the arguments advanced by the parties regarding this question to be very persuasive. For example, we do not find that the amendments to Iowa Code sections 278.1 and 297.22 definitions that occurred in 2008 and 2009 are dispositive regarding legislative intent. In 2008, the legislature amended language in the Iowa Code to authorize the board of directors of a school district to dispose of school property and prohibited voters from taking action contrary to the board for a one year period. *See* 2008 Iowa Acts ch. 1148, §§ 1–3 (codified at Iowa Code § 278.1, § 297.22, and § 297.25 (2009)). Among other things, the legislation specifically defined "dispose" and "disposition" to include "the exchange, transfer, *demolition*, or destruction of any real or other property of the corporation." *Id.* § 1 (codified at Iowa Code § 278.1(1)(*b*) (2009)) (emphasis added).

If this definition remained in the Code today, this litigation would not have arisen. But in 2009, the legislature repealed the changes made in 2008, including the definition of dispose and disposition that specifically included demolition. 2009 Iowa Acts ch. 10, §§ 1–4 (codified at Iowa Code § 278.1(1)(*b*), § 297.22, and § 297.25). The repeal did not simply remove a term from a legislative definition, but repealed the entire legislative definition along with other provisions of the statute. *Id.* The end result was that the law was returned to its pre-2008 position, not only on definitional issues, but on issues related to the power of voters and school boards that were also addressed in the 2008 legislation.

While the school district argues that the repeal demonstrates that the legislature intended to exclude demolition, we think this conclusion does not necessarily follow. The legislature certainly decided that it was unsatisfied with the changes enacted in 2008, but the changes in 2008, however, included an expansion of the power of school boards and a

limitation on the power of voters in connection with disposition of all manner of school property. The legislature apparently decided to return the law to its prior state which, as we have observed, is ambiguous. It is not clear whether the 2008 legislative definition of dispose and disposition was designed to clarify or modify preexisting law.

We also do not believe the scope of the statute authorizing voter referenda should be broadly construed in favor of voters is a helpful or persuasive concept. The plaintiffs rely upon *Devine*, 268 N.W.2d 620. *Devine* involved the elections of representatives in our government, a process that the Supreme Court has identified as essential to our democracy. *Id.* at 623; *see also Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 535 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."). The *Devine* case dealt with regulation of the election process itself, namely, how challenged ballots should be treated in an election contest. 268 N.W.2d at 624. In that context, we emphasized that statutes regulating the process of election of representatives of government should be "construed liberally in favor of giving effect to the voter's choice." *Id.* at 623.

We do not in any way retreat from *Devine*. But the context of this case before us is different. Here, we are not dealing with regulation of the voting process in an election of our governmental representatives. Instead, we are trying to divine the boundary between the power our legislature has allocated to the voters on the one hand and school boards on the other.

While democratic values may be promoted in referenda, the school board is comprised of democratically elected officials empowered to conduct the school district's business through the deliberative process.

Both the actions of the voters through the referendum process and decisions of elected officials in a deliberative setting have been established by the legislature and are entitled to respect. We are not inclined to expansively read the power of the voters at the expense of the deliberative processes of the elected school board through a rule of construction. We think a straight up interpretation of the applicable statutes is a better approach than one that puts a thumb on the scale in favor of the voters acting through referenda. After all, the voters have elected the school board members too.

Upon our review of the applicable statutes and briefings of the parties, we conclude that the defendants have the better argument. The precise unit of language to be examined is not "disposition" or even "other disposition," but rather "sale, lease, or other disposition." Iowa Code § 278.1(1)(*b*) (2017). A sale or lease involves the transfer of an interest in property to a third party. Applying the rule of *ejusdem generis*, any other disposition must also involve a transfer of an interest to a third party, as in a gift. *See generally In re Estate of Sampson*, 838 N.W.2d 663, 670 (Iowa 2013) (finding that statutory interpretation required analysis of a term "with reference to the other items in the list"); *Sallee v. Stewart*, 827 N.W.2d 128, 153 (Iowa 2013) ("[W]hen a phrase . . . is added to a laundry list of terms all of which relate to [a larger theme], we interpret [the phrase in question] to be similar in character to the other [listed terms], all of which relate to [the larger theme]. The fancy term for this is ejusdem generis." (Citation omitted.)); *Iowa Comprehensive Petrol. Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000) ("Under the doctrine of *ejusdem generis*, general words which follow specific words are tied to the meaning and purpose of the specific words.").

A trial court in Florida recently struggled with the question of whether the demolition of a pier building provided the basis for a referendum under a city charter provision that required voter approval when waterfront property owned by the city was "sold, donated, or leased." *See Ford v. City of St. Petersburg*, No. 522012CA010312, 2013 WL 9668711, at *3 (Fla. Cir. Ct. Apr. 5, 2013). The charter provision defined "sale" to include "any 'permanent disposition of an interest in real property other than a utility easement.' " *Id.* The district court held that the purpose of the provision was to protect waterfront property from being alienated to third parties without the consent of the electorate and did not include demolition and repurposing of property. *Id.* The trial court holding was affirmed on appeal in an unpublished opinion. *See Ford v. City of St. Petersburg*, No. 2D13–2118, 2013 WL 6283709, at *1 (Fla. Dist. Ct. App. 2013).

Further, as argued by the defendants, the provision of the statute also authorizes the voters to direct "the application to be made of the proceeds thereof." Iowa Code § 278.1(1)(*b*). Directing application of proceeds would fit awkwardly if the statute was interpreted to include demolition of property where no sale or transfer is involved and no proceeds are generated. Although perhaps it could be argued that the voters would have an interest directing the disposition of the salvage or rubble, "[w]e look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results." *State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006).

Another factor that tips us toward the position of the defendants is the definitions found in the *Meriam Webster Law Dictionary* and *Black's Law Dictionary*. These sources, of course, are designed to be used in a legal context, but that is hardly a disqualifying notion when the key issue

is whether the power to direct disposition of certain property rests with the school district or the voters.

These legal definitions are consistent, for example, with the Uniform Probate Code, which generally provides personal representatives and conservators with the authority "acquire or dispose of an asset" but under a separate section authorizes trustees and personal representatives to "raze . . . buildings." *See* Unif. Probate Code § 3–715(6)–(7) (amended 2010), 8 pt. 2 U.L.A. 208–09 (2013); *id.* § 5–425(7)–(8), 8 pt. 3 U.L.A. 116–17. Apparently, the drafters of the Uniform Probate Code believe the authority to "dispose of an asset" is distinct as a concept, and is not inclusive of the authority to "raze . . . buildings."

We recognize that *Webster's Third New International Dictionary,* cited by the plaintiffs, is a widely used dictionary. But it often contains multiple definitions. This case is no exception. One of the definitions for disposition in this dictionary is "the transfer of property from one to another (as by gift, barter, or sale, or by will)." *Disposition, Webster's Third New International Dictionary* (unabr. ed. 2002).

We also note that the Board is vested with nondelegable authority under the Iowa Code to determine the site of schools. *See Kinney*, 133 Iowa at 96, 104, 110 N.W. at 283, 286; *James v. Gettinger*, 123 Iowa 199, 203, 98 N.W. 723, 724 (Iowa 1904). Here, the Board has determined that the site of an elementary school, Hoover Elementary, should be changed, that the current Hoover facility be demolished at its current site, and that the Hoover site should be repurposed and used in connection with the development of Iowa City High. In our view, while the voters under Iowa Code section 278.1(1)(*b*) could direct that the property be sold, leased, or even given away, they cannot use the referendum mechanism as a vehicle

to control the use of property within the district by the Board for various school purposes.

We are also influenced by the apparent purpose of the statute. The parties have not provided, nor have we found, pertinent legislative history for the original statutory language. Yet, from the language and structure of Iowa Code section 278.1(1)(*b*) and 278.2, we think it clear that the purpose of the statute is to give voters an avenue to regulate the relationship between school districts and third parties. By giving voters the potential to direct the disposition of school property, the legislature has provided a check on potential abuse by elected school officials in their real estate relationships with third parties. When no third party is involved, however, the risk of abuse related to the management of the district's real property is not present.

Finally, we address arguments to the contrary raised by the plaintiffs. We do not think the use of the terms "schoolhouse" and "school site" in Iowa Code section 278.1(1)(*b*) cuts in favor of the plaintiffs' approach. The use of two terms make it clear, for instance, that a lease of a schoolhouse and a sale of unimproved property both fall within the scope of the statute.

We also do not see our approach as inconsistent with Iowa Code section 297.22. Under our approach, the term "disposition" in both Iowa Code section 278.1(1)(*b*) and Iowa Code section 297.22 do not include demolition. Authority for the school boards to demolish buildings may be found in other statutory provisions. *See, e.g.*, Iowa Code § 274.1 (empowering school districts to "hold property"); *id.* § 279.8 (requiring rules "for the care of schoolhouse, grounds, and property"); *id.* § 279.39 (empowering school boards to provide suitable buildings for each school).

For all of the above reasons, we conclude that the defendants were entitled to summary judgment on the question of whether a "disposition" included demolition of a building without the transfer of property to a third party.

**B. Procedural Mechanisms Related to Challenges to the Referendum Process.**

1. *Introduction.* Even assuming that the term "other disposition" does not include demolition, the question arises as to whether the school district is nonetheless prohibited from refusing to direct the county auditor to place the matter on the ballot. The petition in this case had the requisite number of signatures, addresses, and dates under Iowa Code sections 277.4, 277.7, and 278.2, and no objections were filed challenging the petition under Iowa Code sections 277.5 and 277.7. *See id.* §§ 277.4, .5, .7; *id.* § 278.2. The question arises regarding whether a governmental entity may launch a substantive challenge to the lawfulness of a petition that contains the requisite number of signatures. Specifically, may a governmental entity refuse to place a referendum measure on the ballot based on substantive illegality, or must the government entity file a preelection declaratory action challenging the validity of the referendum?

In considering these issues, the parties dispute the meaning and applicability of this court's ruling in *Berent*, 738 N.W.2d 193. *Berent* involved the intersection of three statutes: Iowa Code section 362.4, section 364.2, and section 372.11. *Id.* at 199–201. The gist of the plaintiff's claim was that the city council unlawfully refused to place on the ballot certain amendments to the city charter on the grounds that the proposed charter provisions were illegal. *Id.* at 196.

In *Berent*, three petitions were submitted to the city clerk pursuant to Iowa Code section 362.4 asking that three amendments to the city

charter be placed on the ballot. *Id.* at 197–98. The city clerk determined that the requisite number of electors had signed the petition and accepted them for filing. *Id.* at 198. Seven individuals and the League of Women Voters filed timely objections to the petitions. *Id.* As a result, an objections committee was formed to consider the three petitions. *Id.*

The objections committee in *Berent* sustained at least one objection to each proposed charter amendment. *Id.* One was found to be misleading, and two others were found to be "legally insufficient" because the substance of the proposals did not deal with general structure of governance and thus were not the proper subject for a city charter. *Id.* at 198–99. The district court found that the objections committee had exceeded its authority. *Id.* at 199. The city appealed. *Id.*

We affirmed. We noted that under Iowa Code section 362.4, a petition to amend a city charter is "valid" if it has the requisite number of signatures of eligible electors including their place of residence and the date upon which the petition was signed. *Id.* at 200. Further, under Iowa Code section 372.11, the legislature directed that the city council "must" submit "valid" proposed charter amendments to the voters. *Id.* We concluded that the objections committee thus exceeded its statutory authority when it sustained objections to the charter proposals based on grounds other than "validity" under Iowa Code section 362.4. *Id.* at 200–01.

We then considered whether the city could launch a preelection challenge to the substantive legality of the proposed charter amendments. *Id.* at 201. In concluding that it could launch such an action, we noted that the city had a pecuniary interest in avoiding the cost of a special election. *Id.* at 202–03. We also determined that the question of the validity of the proposed charter amendments was ripe for judicial

resolution.  *Id.* at 203–06.  On the merits, we concluded that two of the proposed charter amendments were inconsistent with Iowa law, and as a result, the city was under no obligation to place the questions on the ballot. *Id.* at 206–13.  One of the proposals, however, was not substantively invalid and the voters were entitled to be heard on the question.  *Id.* at 210–13.

2. *Positions of the parties.*  Relying upon *Berent,* the plaintiffs contend that once a referendum petition is timely filed with the requisite number of signatures, addresses and dates under Iowa Code sections 277.4 and 278.2, the defendants had no choice but to direct the county auditor to place the matter on the general election ballot.

The defendants find *Berent* inapposite.  They focus our attention on the language of Iowa Code section 278.2 which directs the school board to place on the ballot petitions "authorized by law."  Unlike the restrictive language in the statutes in *Berent,* the defendants assert that the legislative directive (that the board shall place measures arising from citizen petitions on the ballot) is thus qualified by the requirement that the proposed ballot measure first be authorized by law.  According to the defendants, the school district, consistent with the statute, declined to direct the county commissioner to place the matter on the ballot because the question posed did not involve a disposition of school property as required by the statute.

3. *Discussion.*  In deciding whether the defendants have failed to preserve their claim under *Berent,* the starting point is examination of the statutes involved.  In *Berent,* the statutory language was quite limited and did not give the city the authority to engage in substantive review of a proposed charter revision.  *Id.* at 200–01, 205–06.

The language in Iowa Code section 278.2, however, is markedly different. The school district is directed to forward to the county auditor only those petitions that are "authorized by law." Iowa Code § 278.2. No such limitation appeared in the language of the statutes involved in *Berent,* which mandated that the city council place "valid" petitions, i.e., petitions with sufficient valid signatures, on the ballot. 738 N.W.2d at 201.

As a result, we conclude that *Berent* does not control in the very different statutory environment presented by Iowa Code section 278.1(1)(*b*). We conclude that the school district properly determined that the proposed ballot measure was not authorized by law because it did not direct the sale, lease, or other disposition of school property.

**IV. Conclusion.**

We conclude that the demolition of a school building is not a disposition under Iowa Code section 278.1(1)(*b*) and that the school district properly determined that because the ballot measure was not "authorized by law," it was under no legal obligation to require the county auditor to place the matter on the ballot. In light of our holding, all other issues raised in the plaintiffs' petition are either moot or resolved against the plaintiffs on the merits. As a result, the district court judgment in this case is affirmed in part, reversed in part, and the matter remanded to the district court for dismissal of the action.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**